**Frank MANDICINO and Anthony Boe, Appellants,**

**v.**

**Fred T. KELLY, James E. Anderson, Ralph E. Wilcox, Robert E. Carlson and W. Henry Hindman, Individually, and collectively as the Board of Supervisors of Woodbury County, Iowa, and Donald E. Linduski, Individually, and as County Auditor of Woodbury County, Appellees,**

**Norman Spencer, Rufus Sheldon, Ardell Countryman, Mervin Zellmer, Dwight Puttman, Bruce Haddock, John S. Lord, Iowa Farm Bureau Federation, and Woodbury County Farm Bureau, each an Iowa Corporation, Intervenors-Appellees.**

**No. 52693.**

Supreme Court of Iowa.

May 7, 1968.

Harry H. Smith, Sioux City, for appellants.

Edward F. Samore and Richard Beebe, Sioux City, for appellees.

Gleysteen, Nelson, Harper, Kunze & Eidsmoe, Sioux City, for Fred T. Kelly, in his individual capacity, as appellee.

Buckingham, Seitzinger & Mason, Des Moines, for intervenors-appellees.

MASON, Justice.

This is a class action asking determination of the constitutionality of the statutory scheme adopted for election of the Woodbury County board of supervisors and for equitable relief if it is found unconstitutional.

I. Plaintiffs' appeal presents the issue whether section 39.19, Codes, 1962, 1966, in forbidding the election of more than two residents of Sioux City township to the board coupled with a provision for voting at-large when electoral districts are abolished, is in violation of Amendment 14 of the federal constitution and Article I of the state constitution where without this prohibition upon residency of board members more residents of Sioux City township might be elected.

Iowa county boards, largely at the discretion of the board itself, are elected either: (1) from districts as nearly equal in population as practicable, (2) at-large but nominated from districts as in (1) or (3) at-large but a limitation of one supervisor to a township except that a city over 35,-000 population comprising a township may have two if a five or seven-man board is involved.

When this action was instituted Woodbury County was divided into five districts each of which elected a supervisor to the board. Sioux City township was one district with a population of 89,159, according to the 1960 federal census, and 23 rural townships with a total population of 18,690 made up the other four districts.

Shortly thereafter on January 17, 1966, the board abolished supervisor districts and adopted an at-large election system for the election of new members to fill vacancies created by the expiration of the terms of present members. At the same meeting, over protest by the Sioux City township supervisor, the board voted to extend Sioux City township to include all of Sioux City proper, including portions of the city that were formerly part of an abutting township. Summarily the election of members will be by at-large vote of the county but limitation imposed that no one township have over one resident on the board except townships having over 35,000 population which may have two resident members. See sections 331.8 and 39.19, Code, 1962. This means that eventually Sioux City township with over 80 percent of the county's population can have but two resident supervisors on the five-man board and three supervisors will continue to be required to reside in the other 23 townships.

II. Plaintiffs, citizens and qualified voters of Sioux City initiated this action in their own behalf and on behalf of other citizens, residents and electors of their class. Defendant Linduski is the county auditor, other defendants are serving as the county board.

Certain citizens and voters in Woodbury County who are members of two Iowa corporations, the Iowa Farm Bureau Federation and the Woodbury County Farm Bureau, have intervened.

In their second amended and substituted petition plaintiffs allege in Division I that the board as the governing body of the county is required by statute to perform, when applicable, various legislative functions affecting the entire county; reapportionment of the board providing for election of members at-large by a county-wide electorate and for diversified residence by candidates for such board position by township is unconstitutional as violative of Amendment 14 to the federal constitution.

In Division II plaintiffs allege the apportionment statutes relating to the election of supervisors in Woodbury County are violative of Article I of the Iowa Constitution.

Plaintiffs contend the apportionment method adopted is invidiously discriminatory.

III. The trial court held that in the election of supervisors there is no significance to the residency requirement in regard to a member's representative endeavor since when coupled with voting at-large his tenure is dependent upon serving the interests of all the people in the county, not just those of the township where he resides, and as each voter may cast his ballot for five candidates who will be especially concerned with his interests there is equality among all voters; thus there now is no discrimination or dilution in the voting power of citizens because of their place of residence. Plaintiffs' amended and substituted petition was dismissed and judgment for costs entered against them.

Of course, the decree was filed before the Supreme Court's decision April 1, 1968, in Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45.

Plaintiffs assign as propositions relied on for reversal refusal of the trial court to hold (1) one man, one vote principles are required by both federal and state constitutions in elections to governmental bodies in Iowa below the level of state legislature; (2) the Woodbury County board is such a legislative and governmental body that one man, one vote principles are required under federal and state constitutions in the election of its members; and (3) the present apportionment of the Woodbury County board is invidiously discriminatory to residents in Sioux City township since such apportionment designedly avoids the consequences of one man, one vote apportionment by preserving the controlling influences of rural areas containing less than 20 percent of the county's total population.

IV. We consider these three propositions other than in the order argued.

Under their second assignment plaintiffs contend the Woodbury County board, along with other Iowa county boards of supervisors, is delegated certain legislative functions by the state legislature.

■ Political subdivisions of states, such as counties, are not sovereign entities; they are subordinate governmental instrumentalities created by the state to assist in carrying out state governmental functions. Reynolds v. Sims, 377 U.S. 533, 575, 84 S. Ct. 1362, 1388, 12 L.Ed.2d 506; State ex rel. Iowa Employment Security Comm. v. Des Moines County, 260 Iowa 341, 149 N. W.2d 288, 291; and Bailey v. Jones, 81 S. D. 617, 139 N.W.2d 385, 388. A board of supervisors has power to make a large number of decisions having a broad range of impacts on all citizens of the county.

Chapter 332, Code, 1962, sets forth the broad powers and duties of these boards.

The board performs numerous duties in regard to elections, chapters 47, 48, 49, 51, and 52; it fills vacancies in elective county offices, section 69.8; approves appointment of temporary assistants to county officials, section 341.1, appoints certain officials— county surveyor, section 355.1, zoning board of adjustment, section 358A.10, weed commissioner, section 317.3, county board of social welfare, 234.9; provides jails and rules and regulations for their operation, sections 356.19, 356.15; lets contracts in the name of the county, section 332.8, builds and maintains roads and bridges, sections 309.7, 309.10, 309.67, 309.73, 309.88, 309.89; administers the county welfare services, sections 347.21, 347A.3, 347A.7, 222.14, 227.14, 229.26, 234.9, 241A.13, 252.- 26, 252.34, 252.35, 253.1, 253.2; provides and maintains suitable law library, section 332.6; provides and maintains county library, section 358B.1, with a board of trustees for it, section 358B.4; provides offices for county officers, section 332.9, and supplies for their operation, 332.10; provides and maintains public disposal ground,

332.31, 332.32; erects, remodels and reconstructs buildings for county purposes with and without approval of citizenry, sections 345.1, 345.3; upon petition conducts hearings regarding relocation of county seats and orders such relocations if certain standards met, chapter 353; upon petition, conducts hearings and orders or disallows formation of, water districts, chapter 357, fire districts, chapter 357A, and sanitary districts, chapter 358; provides zoning regulations for the county, chapter 358A; provides for division of counties into townships, section 359.1, prohibits or regulates public displays, section 444.18; licenses and regulates businesses providing entertainment, foodstuff, prepared food or drink to the public, section 332.23; the board may revoke such licenses, section 332.27; conducts county elections on issue of liquor by the drink, section 123.27(e), and fixes hours during which liquor may be consumed on licensed premises, section 124.31 and sold, section 124.35; compromises claims against the county, section 332.12; abates nuisances, section 332.28; makes some discretionary adjustments in the compensation of county officers, section 332.- 21, and chapter 340; issues bonds, sections 346.1, 347A.7; chapter 455 grants extensive powers to the board for the establishment, maintenance, levy of taxes in support of and formulation of rules and regulations governing the operation of levee and drainage districts.

The board adopts a county budget and appropriates necessary funds, sections 344.- 1, 344.2, appropriates funds for a contingent account, section 344.3, and transfers funds from one departmental budget to another during the year, section 344.6.

The power of the board to levy taxes is provided for generally in chapter 444. Section 444.9 states in part:

"The board of supervisors of each county shall, annually, at its September session, levy the following taxes upon the assessed

value of the taxable property in the county:

"1. * * *

"2. For ordinary county revenue, not to exceed three and one-half mills on a dollar in counties having an assessed valuation of less than sixteen million dollars, not to exceed three mills on a dollar in counties having an assessed valuation of sixteen million dollars or more and less than twenty-six million dollars, * * * [etc]"

Special levies are authorized in section 444.10 for court expense, 444.11 for county orphan fund, and 444.12 for state institution fund. However, compositely these authorized levies do not set the upper limits of the board's power of levy. Nearly every chapter in which the above noted sections conferring powers upon the board are found, includes authorization of a tax levy for implementation of the powers conferred. Without attempting to construe every chapter to determine whether the levy provided for therein is codified within the general levy authorized in section 444.-9, supra, as "ordinary county revenue" section 455.57 permits the levy upon lands within proposed drainage district to pay for construction of the district. Section 309.7 permits a special levy for construction and maintenance of secondary road systems within the county and section 309.-89 for bridge construction and maintenance.

Other powers conferred upon the board include authority to adopt speed and weight limits on certain county roads, sections 321.285 and 321.471. It may change the course of travel of secondary roads, streams, water courses or dry runs, section 306.21.

Finally, the board has power to divide the county into districts for election of its own members.

Defendants and intervenors argue that practically every board created by the Iowa legislature likewise has by statute certain of and sometimes more of the same type of functions, citing as illustrative the board of cosmetology's authority to make rules for conducting examinations under chapters 147 and 157 and the authority of various boards under sections 155.19, 158.7 and 173.14. They contend it would stretch the credulity of the Court to be asked to hold that these various boards are legislative because they have the powers referred to, which are similar to those possessed by the board of supervisors.

In Avery v. Midland County, Texas, supra, a variety of functions assigned to the commissioners court by the Texas Constitution and various statutory enactments are set forth. A great number of these are similar to the powers conferred by our legislature on boards of supervisors. In this case, 88 S.Ct. at 1119, 20 L.Ed.2d at 52, the Court said, "The parties have devoted much effort to urging that alternative labels—'administrative' versus 'legislative'—be applied to the Commissioners Court. As the brief description of the court's functions above amply demonstrates, this unit of local government cannot easily be classified in the neat categories favored by civics texts. The Texas commissioners courts are assigned some tasks which would normally be thought of as 'legislative,' others typically assigned to 'executive' or 'administrative' departments, and still others which are 'judicial.' In this regard Midland County's Commissioners Court is representative of most of the general governing bodies of American cities, counties, towns, and villages."

Defendants and intervenors also assert a great portion of the board's time is utilized in performing perfunctory duties such as approving bills, checking vouchers, considering bids, purchasing equipment, etc. One witness testified that in long years of association with the board, he had no knowledge it had ever enacted a single law. It did not have a code of laws or a book of ordinances. They further assert 90 percent of the board's time is taken up in performing duties which would otherwise be performed by a comptroller in a city or

state office, a state board such as the state fair board, the highway commission and other such boards and commissions, all of which duties are most essential but administrative in nature.

A similar argument advanced by the Texas Supreme Court in Avery v. Midland County, 406 S.W.2d 422, 426, where that Court said "the primary function of the commissioners court is the administration of the business affairs of the county * * Its legislative functions are negligible and county government is not otherwise comparable to the legislature of a state or to the federal Congress * * *" was rejected by the United States Supreme Court on review.

The relevant fact is that the powers of the board of supervisors include the authority to make a substantial number of decisions that affect all citizens, whether they reside inside or outside of Sioux City township.

■ The legislative authority of this state is vested in a General Assembly, Article III, section 1 of the Iowa Constitution, whereas boards of supervisors of a county have only such powers as are expressly conferred by statute or necessarily implied from the power so conferred. Hilgers v. Woodbury County, 200 Iowa 1318, 1320, 206 N.W. 660, 661.

Without spelling out the functions we believe reflect the delegation of substantial legislative power, we believe as stated in Hanlon v. Towey, 274 Minn. 187, 142 N. W.2d 741, 747, "it is sufficient to say that an examination of the statutes dealing with the power delegated persuades us that the legislature itself does not regard the county as solely an administrative arm of state government."

■ The fact the county also performs administrative functions and is somewhat responsive or subject to the legislature does not justify the denial of the application of the equal-representation principle to county boards. State ex rel. Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W.2d 249, 256.

Clearly in Iowa boards of supervisors possess the kinds of "governmental powers" which for purposes here necessitate their classification as legislative bodies.

In answer to defendants' and intervenors' first contention considered in this division, we point out that such powers are not to be confused with the powers of administrative boards and commissions to enact rules and regulations even though they have the effect of law. State ex rel. Sonneborn v. Sylvester, supra.

V. Possessed of such powers, the county boards are subject to the principle of one man, one vote in election of its members.

In Avery v. Midland County, Texas, supra, the U. S. Supreme Court stated, commencing at 88 S.Ct. at 1117–1121, 20 L.Ed.2d at 50–54:

"In Reynolds v. Sims, supra, the Equal Protection Clause was applied to the apportionment of state legislatures. Every qualified resident, *Reynolds* determined, has the right to a ballot for election of state legislators of equal weight to the vote of every other resident, and that right is infringed when legislators are elected from districts of substantially unequal population. The question now before us is whether the Fourteenth Amendment likewise forbids the election of local government officials from districts of disparate size. * * *

"The Equal Protection Clause reaches the exercise of state power however manifested, whether exercised directly or through municipal subdivisions of the State. * * *. Although the forms and functions of local government and the relationships among the various units are matters of state concern, it is now beyond question that a State's political subdivisions must comply with the Fourteenth Amend-

ment. The actions of local government *are* the actions of the State. \* \* \*

"When the State apportions its legislature, it must have due regard for the Equal Protection Clause. Similarly, when the State delegates lawmaking power to local government and provides for the election of local officials from districts specified by statute, ordinance, or local charter, it must insure that those qualified to vote have the right to an equally effective voice in the election process. If voters residing in oversize districts are denied their constitutional right to participate in the election of state legislators, precisely the same kind of deprivation occurs when the members of a city council, school board, or county governing board are elected from districts of substantially unequal population. \* \* \*

\*    \*    \*    \*    \*    \*

"The Equal Protection Clause does not, of course, require that the State never distinguish between citizens, but only that the distinctions that are made not be arbitrary or invidious. The conclusion of Reynolds v. Sims was that bases other than population were not acceptable grounds for distinguishing among citizens when determining the size of districts used to elect members of state legislatures. We hold today only that the Constitution permits no substantial variation from equal population in drawing districts for units of local government having general governmental powers over the entire geographic area served by the body.

\*    \*    \*    \*    \*    \*

"\* \* \* Our decision today is only that the Constitution imposes one ground rule for the development of arrangements of local government: a requirement that units with general governmental powers over an entire geographic area not be apportioned among single-member districts of substantially unequal population."

Cases in which state highest courts applied the principles of Reynolds v. Sims to units of local government are collected in footnote 3 to Avery v. Midland County,

Texas, supra. In this footnote are cited many federal court cases applying Reynolds v. Sims to local government. Many are cited in Meyer v. Campbell, infra. There are additional citations in Armentrout v. Schooler (Mo.), 409 S.W.2d 138, 143.

In Meyer v. Campbell, Iowa, 152 N.W. 2d 617, 621, after reviewing cases of the United States Supreme Court starting with Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, we said "there is nothing in these cases that indicates that the fundamental principle that all men are created equal, and thus accorded an equal vote, should not apply similarly to other inferior bodies that possess legislative power, when the method of their selection is by the elective process."

█ We hold the apportionment standards which apply to states also apply to those governmental units of the state that exercise general governmental functions and powers delegated to them by the state and are designed to be controlled by the voters of the geographic area served by the body; the county is a governmental instrumentality or division of the state and the board of supervisors is the legislative body of the county. The board exercises legislative powers delegated to it by the state; and the state may exercise its legislative powers only in a legislative body apportioned on a population basis, any general elective municipal organ to which it delegates certain of its powers must be subjected to the same basic constitutional requirement. In support see Avery v. Midland County, Texas, supra, 88 S.Ct. at 1118, 20 L.Ed.2d at 51; Seaman v. Fedourich, 16 N.Y.2d 94, 262 N.Y.S.2d 444, 209 N.E.2d 778, 782; and generally, Weinstein, The Effect of the Federal Reapportionment Decisions on Counties and Other Forms of Municipal Government, 65 Col.L. Rev. 21, 23, 27.

Plaintiffs' first proposition is therefore sustained.

VI. In support of their third proposition plaintiffs contend that the present statutory scheme here adopted for election of board members is invidiously discriminatory to residents in Sioux City township because it designedly avoids the consequences of one man, one vote apportionment by preserving a controlling influence to the population minority (rural residents) of Woodbury County through the requirement that a majority of the board reside in the rural areas; they concede the plan is not in violation of Amendment 14 solely because the residence requirement involves townships of grossly varying population (i. e., that board members reside among townships of grossly varying population) but urge there is no rational basis for at-large system of voting which ensures voting control to residences of rural areas who constitute a small minority of the county's population.

Defendants and intervenors on the other hand contend the residence requirement of candidates under section 39.19 is not for voting or representation and is a valid statute, not violative of either the federal or state constitutions.

Section 39.19 states in part:

"Board of supervisors–limitation. No person shall be elected a member of the board of supervisors who is a resident of the same township with any of the members holding over, except that:

"* * *

"2. In counties having five or seven supervisors two members may be residents of a township which embraces a city of thirty-five thousand population."

The precise issue arising from these contentions is whether this section in forbidding election of more than two residents of Sioux City township, which, as previously noted, has 80 percent of the county's population, to the board when single member districts are abolished and voting is at-large is in violation of the Equal Protection Clause of Amendment 14, when absent this limitation more residents of Sioux City might be elected.

As determinative of this issue all cite and rely heavily upon Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656, which is factually quite similar and presented the question of the constitutional validity of an electoral scheme providing for at-large voting but requiring that members elected to the governing body reside elsewhere than wholly among the most populous districts which otherwise, by virtue of their voting strength, could have elected a greater number of residents to that body. We agree that case is determinative of the validity of the effect of the residency requirement here and believe that it supports plaintiffs' contentions.

In *Dusch* the city of Virginia Beach consolidated with adjoining Princess Anne County and adopted a borough form of government. The city council was composed of members elected at-large (four) and one each from the seven boroughs comprising the geographic area. The boroughs of Bayside, Kempsville and Lynnhaven were primarily urban having respective populations of 29,048, 13,900 and 23,731. The boroughs of Blackwater, Princess Anne, and Pungo were primarily rural and had respective populations of 733, 7211 and 2504. Virginia Beach was primarily tourist having a population of 8091. See Davis v. Dusch, 205 Va. 676, 139 S.E.2d 25, 26–27.

As can readily be seen, the urban boroughs could elect a resident majority of the 11-man council when considering the number of at-large candidates they could elect by virtue of their voting strength.

The United States Supreme Court held the electoral scheme guaranteeing each of the seven boroughs, widely variant in population, a resident representative on the governing body of the geographic unit was not invidiously discriminatory to the residents of the urban boroughs.

The principal reason given for sustaining the plan is found in their approval of the trial court's findings.

"* * * 'The principal and adequate reason for providing for the election of one councilman from each borough is to assure that there will be members of the City Council with some general knowledge of rural problems to the end that this heterogeneous city will be able to give due consideration to questions presented throughout the entire area. * * * [T]he history—past and present—of the area and population now comprising the City of Virginia Beach demonstrates the compelling need, at least during an appreciable transition period, for knowledge of rural problems in handling the affairs of one of the largest area-wide cities in the United States. * * * The 'Seven-Four Plan' is not *an evasive scheme to avoid the consequences of reapportionment or to perpetuate certain persons in office. The plan does not preserve any controlling influence of the smaller boroughs,* but does indicate a desire for intelligent expression of views on subjects relating to agriculture which remains a great economic factor in the welfare of the entire population. * * *'" Loc. cit. 387 U.S. 116–117, 87 S.Ct. 1556 (Emphasis supplied).

The Court concluded, "The Seven-Four Plan seems to reflect a detente between urban and rural communities that may be important in resolving the complex problems of the modern megalopolis in relation to the city, the suburbia, and the rural countryside. * * *" Loc. cit. 387 U.S. 117, 87 S.Ct. 1556.

The emphasized language imposes limitations we believe to be conditions of acceptability where an attempt is made to reconcile the constitutional requirements of one man, one vote, and the need to strike a balance between the interests of the ever-decreasing number of rural residents and the ever-increasing number of urban residents. Existence of these limitations may justify constitutional deference to an infraction of the principle of approximate equality among voters by state and local governments in experimentations which the Court encourages to reflect detentes as needed. Avery v. Midland County, Texas, supra, 88 S.Ct. at 1120–1121, 20 L.Ed.2d at 53. However, the Supreme Court has made it quite clear that simply a desire to balance representation of urban and rural interests is not alone sufficient justification to impinge upon the equality guaranteed by the constitution. See Reynolds v. Sims, supra, 377 U.S. at 580 and 623, 84 S.Ct. at 1391 and 1413; Davis v. Mann, 377 U.S. 678, 692, 84 S.Ct. 1441, 1448, 12 L.Ed.2d 609.

■ We therefore believe the holding of Dusch v. Davis, supra, is: Within a geographical unit comprised of disproportionately populated districts a requirement that some representatives to the governing body of that geographical unit necessarily reside among the less populous districts is not an invidiously discriminatory plan, on its face, to the voters of the most populous districts where the representatives are voted upon by the electorate of the entire geographic unit *when* such requirement does not manifest an evasive scheme to avoid the consequences of reapportionment or attempt to perpetuate certain persons in office nor preserve any controlling influence to the less populous districts.

■ The residency requirement here does not meet these conditions of acceptability for in limiting Sioux City township to two resident representatives on the board thereby guaranteeing the rural districts, resident representatives constituting a majority of the board, it preserves a controlling influence to the less populous (rural) districts and is per se invidiously discriminatory to the citizens of Sioux City township. Moreover, in redistricting Sioux City township it is clear the former board controlled by rural resident representatives intended the present scheme to preserve majority control to rural resident representatives, to perpetuate them in office and to avoid the consequences of a reapportion-

ment that will reflect one man, one vote representation. As previously noted, this extension of the Sioux City township area was accomplished over the objection of the only urban resident representative on the board.

We believe there is merit in plaintiffs' argument that apportionment in favoring rural voters over urban voters wrongfully creates two classes of voters within the geographic unit: (1) one class consists of voters residing in Sioux City township; (2) the other those voters residing outside that township.

If the Equal Protection Clause is violated when certain representatives are given an unequal number of constituents, the converse is also true; the Equal Protection Clause is violated if certain constituents are given an unequal number of representatives. Kruidenier v. McCulloch, 258 Iowa 1121, 142 N.W.2d 355, 375.

Here the rural population is given an unequal number of representatives primarily concerned with their interests whereas the urban residents of Sioux City township are denied the right to elect the number of representatives with their interest in mind that absent the residency requirement they could otherwise elect by virtue of their voting strength.

Defendants contend that this analysis presumes that the board members residing elsewhere than Sioux City township (i. e., rural townships) are not vigilant and responsive to the wishes of the residents of Sioux City township, thus ignoring practical realties, i. e., it is not accurate to treat a board member from rural townships as a representative of only the rural townships rather, since his tenure depends upon the county-wide electorate, he must be vigilant to serve the interests of all the people in the county.

This rationale was conceived in Fortson v. Dorsey, 379 U.S. 433, 438, 85 S.Ct. 498, 501, 13 L.Ed.2d 401, factually and issuably dissimilar so not in point but analogously

applied in Dusch v. Davis, supra, thus it is not without merit. However, a careful reading of Dusch v. Davis, supra, discloses that the Court relied upon this rationale only to obviate conclusion that guarantee of a resident representative for each of the disproportionately populated districts who were elected by the voters of the entire geographical unit was not per se invidiously discriminatory to the voters of the urban district. Only because the conditions justifying deviation from equal representation were met by the plan the Court temporarily approved it but warned,

"* * * If a borough's resident on the council represented in fact only the borough, residence being only a front, different conclusions might follow. * * * 'As the plan becomes effective, if it then operates to minimize or cancel out the voting strength of racial or political elements of the voting population, it will be time enough to consider whether the system still passes constitutional muster.' " Dusch v. Davis, supra, 387 U.S. at 116–117, 87 S.Ct. at 1556.

It follows then that *even though* the plan in Dusch did not preserve a controlling influence to the rural districts, the residency requirement in guaranteeing the less populous rural districts a resident representative concededly elected by the geographic unit at-large would be invidiously discriminatory to the voters of the urban districts upon the showing that the rural resident representatives were disregarding the interests of the city as a whole favoring their borough's interests.

Our review in this equitable action is de novo and the scope of the review is the entire action. Rule 334, R.C.P.

In addition to being per se invidiously discriminatory as we have decided, supra, we believe the electoral scheme adopted here is invidiously discriminatory in operation, the rural residents on the board representing in fact only the rural area, residence being only a front, and has in fact

resulted in minimizing or canceling out the voting strength of the population majority.

The fact the rurally dominated board, regardless of protest, has assessed a five-eighths mill optional tax each year against Sioux City residents as well as the other 23 townships even though the funds are spent exclusively for the rural area is claimed as a factor indicating the rural resident representatives were disregarding the city's interest as a whole. The former board's refusal to adopt a welfare program particularly beneficial to plaintiffs and the class they represent which would have provided surplus farm foods to impoverished families at no county expense except the small distribution cost, only a minor fraction of which would have been borne by the rural residents, is cited as supporting evidence.

That board's petitioning the legislature to make no change in the apportionment of gas tax refunds between rural areas and cities and towns provides further support for our conclusion. The League of Municipalities was asking the city's percentage be increased to 15 percent, a 7 percent gain over the previous apportionment of these funds. One percent difference in the percentage would have given Sioux City township about $55,000 additional while the quota to the rural area would be cut by a minimal amount. The 7 percent increase would have meant $419,000 additional for road purposes in Sioux City township with a loss of approximately $35,000 to the rural area.

Although some motions pertaining to these controversies were highly objectionable in the form presented, the issue involved was called to the board's attention but did not receive consideration by the board as constituted.

The very situation warned against in Dusch v. Davis, supra, which had not yet occurred there, has been shown to exist in the operation of the scheme before us.

However complicated or sophisticated an apportionment scheme might be, it cannot, consistent with the Equal Protection Clause, result in a significant undervaluation of the weight of the votes of certain citizens merely because of where they happen to reside. W.M.C.A., Inc. v. Lomenzo, 377 U.S. 633, 653, 84 S.Ct. 1418, 1428, 12 L.Ed.2d 568.

We hold Code section 39.19 in forbidding the election of more than two residents of Sioux City township to the board is violative of Amendment 14 of the federal constitution and Article I of the Iowa Constitution in the circumstances here. As supporting the conclusion reached here see Kruidenier v. McCulloch and Meyer v. Campbell, both supra.

VII. The conclusions reached in Divisions IV and V, supra, of this opinion relative to classification of boards of supervisors as legislative bodies and being subject to the principle of one man, one vote in the election of its members is not limited to Woodbury County.

VIII. "Reapportionment is primarily a matter for legislative consideration and determination, and judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so. Reynolds v. Sims, supra, 377 U.S., at 586, 84 S.Ct., at 1394." Kruidenier v. McCulloch, supra, 258 Iowa 1144, 142 N.W.2d at 368.

The legislature has the duty to establish a system of county government meeting constitutional standards and this Court approaches this problem as it did the apportionment of the state legislature in Kruidenier v. McCulloch, supra, where, in finding the apportionment of the existing law invalid, deferred the effect of the invalidity until the legislature had a reasonable time to act. It cannot be said that the legislature is unaware of the problem or has failed to act. Elections to the

board will be held in 1968 before the legislature would ordinarily convene.

Orderly operation of government requires that the county boards heretofore elected under section 39.19 and to be elected thereunder in 1968 be permitted to function for a reasonable period sufficient for the enactment of new legislation and that the validity of the acts of the board so elected should not be challenged upon the basis of this decision. Meyer v. Campbell, supra, Iowa, 152 N.W.2d at 624, and citations.

This type of procedure is born of necessity and was approved in Reynolds v. Sims, supra; W.M.C.A., Inc. v. Lomenzo, supra, 377 U.S. at 654–655, 84 S.Ct. at 1429, 12 L.Ed.2d 568; and Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 676, 84 S.Ct. 1429, 1440, 12 L.Ed.2d 595.

Plaintiffs have suggested that should we find the instant apportionment unconstitutional, we might allow the Woodbury County board to exercise its authority under Code section 359.1 to divide Sioux City township in such a manner that it might conceivably elect three supervisors under the present statute.

We prefer, however, that the Iowa legislature be afforded an opportunity to enact corrective legislation to provide Woodbury County residents constitutional apportionment for its board of supervisors.

As suggested in Kruidenier v. McCulloch, supra, Iowa, 142 N.W.2d at 368, the Iowa legislature must approach its assignment with the understanding that the Constitutions, both federal and state, permit no substantial variation from equal population in drawing districts for units of local government having general governmental powers over the entire geographic area served by the body.

Consequently, the declaration contained in Division VI, supra, of this opinion shall be prospective in effect. We retain jurisdiction and, if for any reason corrective legislation with any implementation re-

quired is not enacted by June 1, 1969, providing Woodbury County residents a system of county government in accordance with constitutional standards, we will entertain application of interested parties for further and appropriate relief.

IX. The action of the trial court in dismissing plaintiffs' substituted and amended petition and assessing costs against them is

Reversed.

All Justices concur, except RAWLINGS, J., who takes no part.