Robert **FREEMAN** et al.,

v.

Martin **DIES**, Jr., Secretary of State, et al.

**Civ. A. No. 3–3367–B.**

United States District Court
N. D. Texas,
Dallas Division.

Dec. 19, 1969.

---

Jack Gray Johnson and Fletcher L. Yarbrough, of Carrington, Johnson & Stephens, Dallas, Tex., for plaintiffs.

Crawford C. Martin, Atty. Gen. of Texas, Pat Bailey, Executive Asst. Atty. Gen., Nola White, First Asst. Atty. Gen., Hawthorne Phillips, Executive Asst. Atty. Gen., Robert M. Hill, and Oscar H. Mauzy, Dallas, Tex., Edwin T. Phillips, Jr., Fort Worth, Tex., Earl Luna, Dallas, Tex., Henry Wade, Criminal Dist. Atty., Dallas County, by Wilson Johnston, Asst. Dist. Atty., Duncan Boeckman, Dallas, Tex., James C. Byrom, Fort Worth, Tex., Don E. Burdette, Asst. Crim. Dist. Atty., for Frank Caffey, Crim. Dist. Atty., Tarrant County, Tex., Charles F. Herring, Austin, Tex., for defendants.

### OPINION

Before GOLDBERG, Circuit Judge, and HUGHES and TAYLOR, District Judges.

HUGHES, District Judge.

In this suit plaintiffs seek the prompt reapportionment of the districts of the Texas State Board of Education. Plaintiffs are residents of Texas, specifically of Dallas and Tarrant Counties, and are qualified and registered to vote. The case involves Section 1 of Article 2654–2 of the Texas Civil Statutes, now Section 11.24 of the Texas Education Code, V. A.T.S., which created the State Board of Education and established the apportionment system under attack here.

It is the contention of plaintiffs that the method for election of members of the State Board of Education (one from each of the twenty-one Congressional Districts of Texas as they existed in 1949) is unconstitutional, in that it deprives the plaintiffs and all other persons similarly situated of their rights to equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States. We agree and hold that such provision violates the Fourteenth Amendment.

It is the further contention of plaintiffs that the defendants should be permanently enjoined from enforcing, applying, or following the statutory apportionment of Section 11.24 of the Texas Education Code. With this contention we likewise agree.

Further, the plaintiffs contend that this Court should immediately adopt a plan whereby members would be elected from districts of equal population. We disagree with plaintiffs' proposal that this Court should take immediate action. We hold rather that action should be stayed to give the Legislature convening in January, 1971, the opportunity to correct the unconstitutional features of the present statute.

In 1949 the Texas Legislature enacted Article 2654–2 of the Texas Civil Statutes creating the SBE to consist of twenty-one members, one from each of the twenty-one Congressional Districts.[1] In 1969 the Legislature enacted the Texas Education Code, effective September 1, 1969. Section 11.21 of the Code[2] replaced Section 1 of Article 2654–2, which was repealed.

The twenty-one members are elected for terms of six years, one-third every two years.[3] The next election is in November, 1970.

The statute creating the Board provided for its powers in Article 2654–3. The Education Code enacted in 1969 replaced Article 2654–3 with Sections 11.-24 through 11.34 of the Code.

Generally the SBE (State Board of Education) is the policy forming and planning body for the Public School System of the State. It also is the State Board for Vocational Education and has all the powers and duties conferred upon that Board. It adopts policies, enacts regulations and establishes general rules for carrying out its policies, reviews the educational needs of the State and adopts plans for meeting the needs. It presents proposed budgets for programs to the Board of Control and adopts operating budgets on the basis of appropriations by the Legislature. It establishes regulations for the accreditation of schools and executes contracts to carry out its programs and for investment of the Public School Fund.

The SBE also has the duty to adopt a budget for the operation of the Texas Central Education Agency; to approve or reject nominations for appointment to the State Textbook Committee; to elect the State Commissioner of Education; to adopt general rules and regulations concerning the functions of the State Department of Education; to make important determinations with respect to the Permanent School Fund and the Available School Fund of the State; and to nominate one member of the Board of Trustees of the State Teachers Retirement System.

The SBE also performs many discretionary functions in connection with the school system, including the making of discretionary determinations with reference to the allocation of money among the various school districts.

There is no dispute regarding the variations of population in the SBE districts. Since the establishment of the Board in 1949 the Legislature has made no change in the districts. Members continue to be elected from the Congressional Districts as they existed in 1949. The result is that due to a decided shift of people to urban areas the districts are not equal in population. According to

1. Section 1. There is hereby created the State Board of Education, to consist of twenty-one (21) members. One (1)ʹ member of the State Board of Education shall be elected from each of the twenty-one (21) Congressional Districts of the State of Texas.

2. The State Board of Education shall be composed of 21 members, one elected from each of the educational districts, whose boundaries are coterminous with the congressional districts as constituted in 1949 under Senate Bill 195, Chapter 135, Acts 43rd Legislature Regular Session.

3. The Texas Constitution in Article 16, section 30a, Vernon's Ann.St. states: The Legislature may provide by law that the members of * * * such boards as have been, or may hereafter be established by law, may hold their respective offices for the term of six (6) years, one-third of the members of such boards to be elected or appointed every two (2) years in such manner as the Legislature may determine; * * *.

the 1960 census the populations of the districts vary from the Sixth, which is the smallest with a low of 205,409 persons, to the Eighth with 1,243,158 persons. The relative value of a vote in the Sixth District compared to the weight of a vote in the Eighth District under the 1960 census is six to one.

Under the 1968 estimate of the Texas population by the Population Research Center of the University of Texas at Austin the population of the four largest counties has increased at a much greater rate than the populations of rural counties. The result is that under the 1968 estimate the relative weight of a vote in the smallest district (Sixth) compared to the weight of a vote in the largest (Eighth) is 7.63 to one.

According to the 1960 census figures the eleven districts having the smallest population have a combined number of 3,024,139 persons, which is 31.57% of the state's population. Thus less than one-third of the people of Texas elect a majority of the twenty-one member Board.

Reynolds v. Sims, 377 U.S. 533, 84 S. Ct. 1362, 12 L.Ed.2d 506 (1964), made it clear that the Equal Protection Clause of the Constitution, as applied to legislative bodies, requires that all citizens in a State have approximately equally weighted votes regardless of where they reside. The Court declared that a State must

"Make an honest and good faith effort to construct districts * * * as nearly of equal population as is practicable. We realize that it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters. Mathematical exactness or precision is hardly a workable constitutional requirement." (377 U.S. at 577, 84 S.Ct. at 1390).

Any doubt remaining that deviation from the one-man one-vote principle announced in Reynolds v. Sims must be slight, was removed by the Supreme Court in its opinion in Kirkpatrick v. Preisle, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969). Under attack in that case was the Missouri reapportionment statute creating Congressional districts varying in population from about 420,000 to about 445,000. The ratio of the largest to the smallest district was only 1.06 to one. The Court in holding the statute unconstitutional declared that the reapportionment standard "requires that the State make a good-faith effort to achieve precise mathematical equality." (394 U.S. at 530, 89 S.Ct. at 1229).

Applying the Supreme Court's test of districts "as nearly of equal population as is practicable" to the SBE districts as presently constituted, it is beyond question that the variations found in the Texas system are impermissibly excessive.

We next examine the question of whether the application of the one-man one-vote requirement for the apportionment of legislative bodies should be extended to state-wide elective Boards.

Following Reynolds v. Sims many state and federal courts held that the Fourteenth Amendment forbids the election of local government officials from districts of disparate size. These cases are enumerated in footnote 3 of Avery v. Midland County, 390 U.S. 474, 476, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), the first case coming to the Supreme Court involving the apportionment of districts in a unit of local government. Avery concerned the selection of Midland County Commissioners from single-member districts of substantially unequal population. The Court turned to the concept of "general governmental powers" to describe the types of body to which the equal protection clause applies.

In discussing these duties the Court said at 484, 88 S.Ct. at 1120:

"the relevant fact is that the powers of the Commissioners Court include the authority to make a substantial number of decisions that affect all cit-

izens (of the County) * * *. The Commissioners maintain buildings, administer welfare services, and determine school districts * * *."

Finally the Court concluded at 485, 88 S.Ct. at 1121:

"the Constitution imposes one ground rule for the development of arrangements of local government: a requirement that units with general governmental powers over an entire geographic area not be apportioned among single-member districts of substantially unequal population."

It is clear from the enumeration of the duties of the SBE as set forth in the Texas Education Code that it is vested with significant and important powers of government and that it has a broad range of impacts on all the citizens of the state—children, parents and the public generally.

It is the contention of defendants in the case before us that the SBE has no legislative duties and for that reason the principle enumerated in Reynolds v. Sims should not be applied. This basis for determining the applicability of the Equal Protection Clause was rejected by Avery v. Midland,[4] and since *Avery* there has been substantial agreement among the lower federal and state courts that the administrative-legislative dichotomy argument is no longer relevant in a case involving a discrimination against, or exclusion of, a portion of qualified voters in an election.[5]

The recent case of Kramer v. Union Free School District No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), expressly recognized that the one-man, one-vote principle should be applied to elected units of government without legislative authority. Called into question in that case was a provision of the New York Education Law providing that in certain New York school districts residents otherwise eligible could vote in the school district election only if they were owners of taxable real property in the district, or were parents or guardians of children enrolled in the local public schools.

Although *Kramer* involved an absolute exclusion of some citizens from voting, the issue was the same as that presented in malapportionment cases, that is, whether a discrimination against some otherwise qualified voters violated the Equal Protection Clause in the absence of a compelling state interest. In answering in the affirmative the issue of whether the voting exclusions in *Kramer* violated the Fourteenth Amendment's command that no State shall deny persons equal protection of the laws the Court declared that the need for close judicial examination is not "affected because the district meetings and the school board do not have 'general' legislative powers." (395 U.S. at 629, 89 S. Ct. at 1891).

In Harper v. Virginia Board of Elections, 383 U.S. 663, 665, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169 (1965), involving the legality of the poll tax as a requirement for voting, the Court declared that "once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment." [6]

---

4. See 390 U.S. at 482, 88 S.Ct. 1114.

5. Simone v. MacPhail, 291 F.Supp. 697 (D.Kan.1968) ; Simon v. Landry, 286 F.Supp. 60 (W.D.La.1968) ; Hartman v. City and County of Denver, 440 P.2d 778 (Colo.1968) ; Mandicino v. Kelly, 158 N.W.2d 754 (Iowa 1968) ; State ex rel. Lashkowitz v. Cass County, 158 N.W.2d 687 (N.D.1968). But see, Hadley v. Junior College District of Metropolitan Kansas City, 432 S.W.2d 328 (Mo.1968), probable jurisdiction noted,

393 U.S. 1115, 89 S.Ct. 991, 22 L.Ed.2d 120 (1969).

6. *Cf.* Sailors v. Bd. of Education of Kent County, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1966), in which the Supreme Court distinguished the issue of when a governmental body does not have to be elected:

At least as respects non-legislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done

For the reasons stated we hold that Section 11.21 of the Texas Education Code is unconstitutional in that it deprives plaintiffs and all persons similarly situated of their right to equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States.

■ Section 11.21 of the Texas Education Code being invalid, plaintiffs are entitled to an injunction permanently enjoining defendants from enforcing, applying or following the statutory apportionment.

■ Plaintiffs next contend that this Court should adopt a plan for the selection of members of the SBE from districts of equal population beginning with the election in 1970 and pending action by the 1971 Legislature. The method proposed in plaintiffs' petition provides that SBE members shall be elected from the present Congressional Districts as apportioned by the Legislature in 1967.

The question for this Court to decide is whether our decision declaring the statute for the election of SBE members unconstitutional requires us to formulate a plan for future elections or whether a one election delay can be constitutionally tolerated.

We have found no case in which immediate relief was granted in circumstances similar to those here involved. In Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225 (1969), the Supreme Court stayed the district court order pending appeal and expressly authorized Missouri to conduct the 1968 congressional election under the unconstitutional statute. In Reynolds v. Sims, *supra*, the court held that the constitutional requirement was met by one reapportionment between each decennial census. In Wells v. Rockefeller, 394 U.S. 542, 89 S.Ct. 1234, 22 L.Ed.2d 535 (1968), the Supreme Court held that the district court in permitting the 1968 Congressional election to proceed under an unconstitutional statute when the primary election was three months away did not commit error.

The case of Cahoon et al. v. Maddox et al., decided December, 1969, (N.D.Ga.), dealt with the reapportionment of Georgia Congressional Districts. The plaintiffs sought prompt reapportionment. In denying immediate injunctive relief the Court said:

In sum, we are here concerned with an exercise of discretion in granting or denying injunctive relief. We weigh the desired stability in a representative form of government on the one hand with what plaintiffs and their class might gain for a one election-two year period. We cannot ignore the fact, which is apparent from population estimates, that reapportionment now, using the 1960 census may well result in again moving some of the same counties after the 1970 census is available. The residents of some entire counties would change congressman for only a two year period. The court can assume that many of these residents would have matters of concern in process with their present congressman. The alternative is complete reapportionment now using population estimates. We decline to require the use of estimates in light of the near availability of the 1970 census and because we are not convinced of the accuracy of the estimates. For these reasons we conclude that the scales tip in favor of denying injunctive relief."

here. If we assume *arguendo* that where a State provides for an election of a local official or *agency*—whether administrative, legislative, or judicial—the requirements of Gray v. Sanders [372 U.S. 368, 83 S.Ct. 801, 9 L.Ed. 2d 821] and Reynolds v. Sims must be met, no question of that character is presented. For while there was an election here for the local school board, no constitutional complaint is raised respecting that election. Since the choice of members of the county school board did not involve an election and since none was required for these non-legislative offices, the principle of "one man, one vote" has no relevancy. (387 U.S. at 111, 87 S.Ct. at 1553).

Similar federal district court cases in which reapportionment was sought and which gave the legislature an opportunity to act before granting immediate reapportionment are Strickland v. Burns, 256 F.Supp. 824 (M.D.Tenn.1966), and the case of Oliver v. Board of Education, 306 F.Supp. 1286 (S.D.N.Y.1969). In the case before us we believe that in the interest of stability we should stay the injunction until the 1971 Legislature has had an opportunity to act.

In cases in which the Court itself has implemented a plan litigation had ensued for several years. The litigation here is new and the Legislature has not had an opportunity to act since this case was filed. In addition candidates must announce by February 1, 1970. The available time for implementation of a plan changing the districts and increasing their number is too short for careful consideration.

The plan urged by the plaintiffs contemplates that we adopt for the election of SBE members the congressional districts established by the Legislature in 1967. With the increasing shift of people from the rural to the urban areas the 1967 population estimates in all probability do not reflect the true populations of the various districts. The 1970 census might well require other changes. The plan proposed by the plaintiffs would likewise result in changing the Board from a twenty-one to a twenty-three member board, since Texas now has twenty-three Congressmen. The Legislature may not agree that the SBE should be enlarged. If twenty-three districts are created, such action would likewise not comply with the constitutional provision requiring one-third of such boards be elected every two years since twenty-three is not divisible by 3. While we do not rule on whether this constitutional provision is mandatory, the Attorney General of the State has both ruled and long advised that the membership on boards affected by the provisions of Article XVI, Section 30a, must be divisible by three to comply with the constitutional provision.

For the reasons stated we stay the injunction until June 1, 1971, to give the Legislature time to act. In the judgment heretofore filed we decreed that members of the SBE to be elected in November, 1970, shall serve for a term of two years, that the term of the members elected in November, 1968, shall terminate December 31, 1972, and that no election for members shall be held after November, 1970.