

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

January 24, 1974

The Honorable Ben R. Howell,
   Chairman
State Board of Education
201 East Eleventh Street
Austin, Texas

Opinion No. H-219

Re: Effect of Judicial Change in
   Congressional Districts upon
   Offices of Members of State
   Board of Education

Dear Mr. Howell:

You have requested an opinion as to the effect of court-ordered Congressional redistricting upon the tenure of members of the State Board of Education.

The Texas Education Code provisions governing election and tenure of Board members are in pertinent part as follows:

> "§ 11.21.   The State Board of Education is composed of one member elected from each congressional district established by law.
>
> "§ 11.22 . . . .
>
> "(c)  No person shall be elected from or serve in a district who is not a bona fide resident thereof with five years' continuous residence prior to his election. . . .
>
> " . . . .
>
> "(h)  At the general election in 1972, and at each general election thereafter immediately following a decennial reapportionment of congressional districts, one member shall be elected to the board from each congressional district.  Except as provided in Sub-

section (i) of this section, members of the board
serve staggered terms of six years with the terms of
one-third of the members expiring on December 31
of each even-numbered year.

"(i) One-third of the members of the board
elected in 1972 and at each general election following
a decennial reapportionment of congressional districts
shall serve for terms of two years, one-third for
four years, and one-third for six years. Members
shall draw lots to determine which shall serve for
terms of two, four, and six years. If the total number
of members divided by three results in a remainder
of one, one additional six-year term shall be filled
by lot. If the total number of members divided by
three results in a remainder of two, one additional
six-year term and one additional four-year term shall
be filled by lot. " (emphasis added).

Each member of the present State Board of Education was elected in
November 1972 from congressional districts established in Senate Bill 1. (Acts
1971, 62d Leg., First C. S., ch. 12, p. 38).

On October 19, 1971, suit was filed in the United States District Court for
the Northern District of Texas challenging the constitutionality of Senate Bill 1.
On January 22, 1972, the court announced its decision, holding Senate Bill 1 to
be unconstitutional and implementing "Plan C" as the reapportionment plan for
the state. The District Court enjoined the Secretary of State from conducting
or permitting any primary or general elections based upon the districts estab-
lished by Senate Bill 1, but a stay of the order of the District Court was granted
by the United States Supreme Court. Bullock v. Weiser, 404 U. S. 1065 (1972).
As a result, the congressional and Board of Education races in 1972 were con-
ducted according to the provisions of existing law under Senate Bill 1. On June
18, 1973, the Supreme Court upheld the decision of the District Court in declaring
Senate Bill 1 to be unconstitutional, but, disagreeing with the adoption of "Plan
C", remanded the case to the District Court for further proceedings consistent
with its opinion. White v. Weiser, 37 L. Ed. 2d 335. On October 17, 1973,

the three-judge court issued its memorandum opinion and order requiring the implementation of "Plan B". One group which sought to intervene in Weiser and to modify "Plan B" as it affected Dallas County only was denied that opportunity by the Court. It alone is appealing. The appeal, of course, does not seek to and cannot reinstate the S. B. 1 districts. The newly defined Weiser "Plan B" districts are the Texas congressional districts "established by law" from which Congressmen must run in 1974.

You have posed the following questions:

> "1. Are the members [of the State Board of Education] elected in 1972 who drew terms of four years or six years, and who otherwise remain qualified, entitled to serve for the full term?

> "2. Assuming an affirmative answer to question one, does the change in boundaries of congressional districts disqualify a member who resided in the district at the time of election but whose residence is now located within another district following the change in district boundaries?"

Since the statute requires that all members of the Board must stand for election at the first general election "immediately following a decennial reapportionment of congressional districts," the answer to your first question turns on the meaning of "decennial reapportionment".

If "decennial reapportionment" means adoption of a reapportionment plan by the Legislature including any modification or replacement of such a plan by the courts, then the process of "decennial reapportionment" was not completed until the adoption of "Plan B" by the Weiser court in October 1973, and the "general election . . . immediately following a decennial reapportionment of congressional districts" will be the 1974 election, thus requiring candidates for every Board position to run for election in 1974 from "Plan B" districts. If, on the other hand, "decennial reapportionment" does not include court action, but refers only to legislative reapportionment, a contrary result could be possible.

Our research leads us to the conclusion that the first alternative is the correct construction. We feel that Mauzy v. Legislative Redistricting Board,

471 S. W. 2d 570 (Tex. 1971) compels this result. In Mauzy, the Supreme Court of Texas dealt with Art. 3, § 28, Constitution of Texas, which provides, in part:

> "The Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts, agreeable to the provisions of Sections 25, 26, and 26-a of this Article. In the event the Legislature shall at any such first regular session following the publication of a United States decennial census, fail to make such apportionment, same shall be done by the Legislative Redistricting Board of Texas. . . ."

After the 1970 United States census, the 62nd Legislature, in 1971, reapportioned the Texas House. That Act was declared invalid by a state district court. The trial court was affirmed by the Supreme Court of Texas. Smith v. Craddick, 471 S. W. 2d 375 (Tex. 1971). The Legislative Redistricting Board was then petitioned to redistrict the state in accordance with Article 3, § 28. The Board declined, taking the position that the Legislature had enacted an apportionment act, i. e., that the Legislature had not failed to reapportion itself, and that therefore the Board had no jurisdiction to act.

The Supreme Court rejected that argument, holding that the Board did have jurisdiction:

> "An apportionment which is invalid, for whatever reason, is no apportionment; and the Board's duty to proceed with apportioning the state into representative districts accrued when the regular session adjourned on May 31, 1971 without having enacted a valid apportionment statute." (emphasis added) (471 S. W. 2d at 574)

It thus seems clear under Mauzy that in the instant case "decennial reapportionment" means the entire reapportionment process, including the adoption in October 1973 of "Plan B" by the federal courts. Under Mauzy, Senate Bill 1 cannot be considered an apportionment at all. The 1974 general election will thus be the general election "immediately following a decennial reapportionment of congressional districts," and each Board member must therefore stand for election in

1974. Precedents such as Childress County v. Sachse, 310 S. W. 2d 414 (Tex. Civ. App., Amarillo, 1958, error ref'd, n. r. e. ) are not applicable here because § 11. 22 clearly contemplates interruption of terms by decennial reapportionment.

It should be emphasized that this result flows from the application of case law and principles of statutory interpretation to the Texas constitutional and statutory provisions governing Board elections, and not on any theory that under Weiser v. White the lines drawn in Senate Bill 1 would be unconstitutional as Board districts.

White v. Regester, ____ U.S. ____, 37 L. Ed 2d 314 (1973); Gaffney v. Cummings, ____ U.S. ____, 37 L. Ed 298 (1973) and other recent cases make abundantly clear that districts for election of state officials are not required by the constitution to meet the same standards of mathematic equality as are Congressional districts. Thus, in Regester, deviation between the largest and the smallest legislative districts was 9.9%, a figure which the Supreme Court of the United States held not to violate the principle of one man, one vote. The deviations in congressional districts defined by Senate Bill 1 were a maximum of 4.1% which might well pass constitutional muster in so far as State offices such as State Board of Education districts are concerned.

The earlier case of Freeman v. Dies, 307 F. Supp. 1028 (N. D. Tex. 1969) condemned the Board districts as then defined (they were fixed by 1949 Congressional districts, not subject to change by successive congressional reapportionment) because the population in the smallest of the then twenty-year-old districts varied by more than a million persons from the largest district.

Although the S. B. 1 districts might have been valid as State Board of Education districts if the Legislature had chosen to authorize separate Board districts and had drawn them as such, it did not. By the scheme it chose Board districts and congressional districts are one and the same.

In view of our answer to your first question, we need not reach the second.

## SUMMARY

The general election of 1974 will be the first general election "immediately following a decennial

reapportionment of congressional districts, " and
one member must be elected to the State Board of
Education from each Congressional district in 1974.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee