AUGUST T. MEYER et al., appellees, v. MAURICE CAMPBELL et al., members of Board of Education, Carroll County, appellants.

No. 52580.

(Reported in 152 N.W.2d 617)

AUGUST 31, 1967.

1348

Hanson & Barron, of Audubon, and Alan Loth, of Fort Dodge, for appellants.

Wunschel & Schechtman, of Carroll, for appellees.

LARSON, J.—Plaintiffs are citizens and registered voters in fourteen different townships in Carroll County, Iowa, who bring suit on behalf of all Carroll County voters similarly situated.

Defendants other than the county superintendent are duly elected, qualified and acting members of the Carroll County Board of Education, one from each of the four districts and one from the whole area.

This suit questions the composition of the board, plaintiffs claiming the board as it is now composed does not meet the constitutional requirements of section 1 of Amendment 14 to the United States Constitution, and sections 1, 2 and 6 of the "Bill of Rights" of the Iowa Constitution.

Plaintiffs pray (1) for a declaratory judgment that the present apportionment of the board is unconstitutional, (2) for an order requiring future elections of all members of the board be at large, (3) in the alternative, that the board be required to redistrict itself constitutionally by August 1966 or terminate the present terms on September 1, 1966, requiring all to be elected at large, and (4) that the court retain jurisdiction until these orders are carried out. They further alleged irreparable damage if that relief be delayed and asked that the board be enjoined from performing its statutory duties until the members are chosen on a population basis.

A temporary injunction was issued on June 22, 1966, and on January 6, 1967, the trial court found for plaintiffs, declared the manner and method of selection of the board members was unconstitutional and issued a permanent injunction prohibiting the members from performing any and all legislative acts or functions pursuant to chapter 275 of the Code. Defendants appeal and, on application to this court, the injunction was stayed pending appeal.

We affirm the decision on the constitutional question and set aside the injunction. Pending consideration of the matter by the Sixty-third General Assembly in 1969, jurisdiction of the matter is retained.

Two primary questions are posed by this appeal: 1. Do the equal protection guarantees require this county board of education to be elected by population rather than selected by area? 2. Should a decree invalidating the method of selecting the board also terminate its acts before the legislature has an opportunity to provide another permissible method?

There is little or no dispute as to the facts involved. The county board of education is a unique body created by Code chapter 273. It has "direction" of the "county school system" excluding independent and consolidated school districts with their own high schools (Code section 273.2).

Before 1948 the board members were appointed by a convention of delegates appointed by the local school boards (Code 1946, chapter 271). The Iowa Constitution, Article IX, section 15, authorizes the legislature to "provide for the educational interest of the State in any other manner that to them shall seem best and proper", and does not require the election of the members of the education boards. The State can, of course, constitutionally refuse to set up an elective process for the selection of municipal officials; it can appoint them all. Metropolitan Railroad Co. v. District of Columbia, 132 U. S. 1, 10 S. Ct. 19, 33 L. Ed. 231. Reynolds v. Sims, 377 U. S. 533, 84 S. Ct. 1362, 12 L. Ed.2d 506, cannot be read to guarantee a "right to an elective process" in the selection of officials of substate governmental units who are currently appointed.

The Fifty-second General Assembly changed the method of selecting the board members. The present provisions as found in section 273.3 of the 1966 Code are: "The territory of the entire county shall be divided into four election areas, as nearly as possible of equal size and contiguous territory, to be designated as the first, the second, the third and the fourth election areas. Where districts have territory in more than one county [as in this case], the district will belong to the election area of the county where the school buildings are located. In the event of changes in the limits of school districts, the county board of education shall make any such adjustments as may be necessary to equalize the territorial size of the election areas, provided that no such change shall be made less than sixty days prior to the date of the annual school election."

Section 273.4 provides: "The county board of education shall consist of five members, electors of the county, one member to be elected from each of the four election areas by the electors of the respective areas, one member to be elected at large from the area of the county school system by the electors thereof. * * * Vacancies on said board shall be filled * * * by appointment by the remaining members of the board * * *."

In the case at bar there is no complaint as to the area size, but the issue raised relates to the differences in the population of these areas. The court correctly found they were disproportionate because there are 10,200 people in Area II, many more than in the other three areas which are fairly equal. As permitted in section 273.2 of the Code, Area II was enlarged by the voluntary joining of the area by the people of the Carroll Independent District, which included the City of Carroll and its high school. Carroll's population was listed at 7682 people. However, the voluntariness of the inclusion of the Carroll Independent District will not affect its citizens' rights to equal protection under the law. Lucas v. Forty-fourth General Assembly of the State of Colo., 377 U. S. 713, 84 S. Ct. 1459, 12 L. Ed.2d 632 (1964); Bianchi v. Griffing, 238 F. Supp. 997, 999 (1965).

I. Appellees contend the equal protection clauses of the State and Federal Constitutions are violated by the method of selection of the members of the county board of education

(Amendment 14 to the United States Constitution and Article I, section 6, of the Iowa Constitution), and urge us to extend the "one man-one vote" rule announced in Reynolds v. Sims, supra, and in Kruidenier v. McCulloch, 258 Iowa 1121, 142 N.W.2d 355, to the selection of members of county boards of education.

In the recent decision of the United States Supreme Court of Sailors v. Board of Education, 387 U. S. 105, 108, 87 S. Ct. 1549, 18 L. Ed.2d 650, under the date of May 22, 1967, the court made this statement: "We find no constitutional reason why state or local officers of the nonlegislative character involved here may not be chosen by the governor, by the legislature, *or by some other appointive means rather than by an election.*" (Emphasis added.) It seemed to hold the county board of education, which performs essentially administrative functions, is not legislative in the "classical sense" so as to fall under the requirements of Gray v. Sanders, 372 U. S. 368, 83 S. Ct. 801, 9 L. Ed.2d 821 (1963), and Reynolds v. Sims, supra, although it does not pass on the question we have here where the legislature has provided for the election of such county board.

Justice Douglas, in Sailors, does not elaborate as to what is meant by "other appointive means rather than by an election", but we are of the opinion this refers to appointment by a person or persons who have been properly elected by the people on a population basis.

When the legislature changed the method of selection of the county boards to elective rather than appointive, appellees contend, the members of the county boards then became the direct representatives of the people, and the State and Federal Constitutions require their election on an equal representation basis. We agree. The fact that an elective method of selection has been chosen implies that each citizen is thought to have an equal stake in their composition. See article by Professor Weinstein, 65 Columbia Law Review 31 to 33 (1965).

Thus, at the outset we are faced with three important questions: 1. Is the doctrine enunciated in Gray v. Sanders and Reynolds v. Sims applicable to inferior bodies delegated some legislative and administrative functions? 2. Are the functions

delegated to the county boards of education in Iowa legislative in nature so as to fall under the requirements of Gray v. Sanders and Reynolds. v. Sims? 3. Since the Iowa legislature has required that members of the board be elected, is the question of whether their function is primarily legislative or administrative decisive?

II. The doctrine of equal representation or, as it is more commonly known, "the one man-one vote system", as a constitutional requirement under Amendment 14, is of recent origin and has received the most diligent consideration and analysis by the United States Supreme Court. Shortly after the landmark case of Baker v. Carr (1962), 369 U. S. 186, 82 S. Ct. 691, 7 L. Ed.2d 663, which held that the question of legislative reapportionment was a justiciable issue, the doctrine of equal representation came into its own in the case of Gray v. Sanders (1963), supra, as a protection guaranteed by Amendment 14.

In Gray v. Sanders a Georgia county unit system was held unconstitutional as applied to a state-wide primary election because the votes of certain Georgia citizens were accorded less weight merely because of where they resided. The court stated at pages 379 and 380 of 372 U. S.: "The concept of 'we the people' under the Constitution visualizes no preferred class of voters but equality among those who meet the basic qualifications."

Moreover, in Wesberry v. Sanders (1964), 376 U. S. 1, 84 S. Ct. 526, 11 L. Ed.2d 481, the court set out the test for the constitutionality of congressional districting. The test was one of substantial equality of population among the several districts established by the state legislatures for the election of members to the House of Representatives. The rationale behind this test was that "By the people" stands for the principle that one man's vote should be accorded no more or no less weight than another man's vote where practically possible.

Finally, in Reynolds v. Sims (1964), supra, 377 U. S. 533, 84 S. Ct. 1362, 12 L. Ed.2d 506, the Supreme Court extended the doctrine of equal representation to the election of state legislators. The court predicated its decision on the rationale that legislators were representatives of the people and not of land areas, rural interests or urban interests. We followed that pro-

nouncement in Kruidenier v. McCulloch, supra, 258 Iowa 1121, 142 N.W.2d 355.

It is true that these aforementioned cases dealt only with the right to vote on the membership of the various legislatures. However, there is nothing in these cases that indicates that the fundamental principle that all men are created equal, and thus accorded an equal vote, should not apply similarly to other inferior bodies that possess legislative power, when the method of their selection is by the elective process. Hanlon v. Towey, 274 Minn. 187, 142 N.W.2d 741 (1966), and citations; State ex rel. Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W.2d 249. Since it is a basic principle of representative government that the weight of a person's vote does not depend on geographical boundaries, it follows logically that any inferior *elective* body, that is representative of the people, be representative of all the people equally. Seaman v. Fedourich, 16 N. Y.2d 94, 262 N. Y. S.2d 444, 209 N.E.2d 778; Armentrout v. Schooler (Mo.), 409 S.W.2d 138 (1966); Bianchi v. Griffing, supra. On the other hand, we recognize the proposition set out in the dictum of Reynolds v. Sims, supra, at page 575 of 377 U. S., that "Political subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions." Although this statement was quoted with approval in Sailors v. Board of Education, supra, it must be noted that case dealt with the *appointment* of local administrative officials and not the election of them. Therefore, we feel the Reynolds quote is not determinative of whether Amendment 14 applies to the composition of those bodies which possess the power to affect the individual's rights or property when their selection is determined by the elective process.

Since our own legislature chose to make members of the board elective rather than appointive, it intended that these members represent the people and not geographical land areas. Each voter similarly situated is entitled to equal representation. In the case at bar, this is not the result in Area II where the

disparity of population is so great that it causes invidious discrimination.

■■ III. To the extent permitted by the Iowa Constitution, there are certain legislative functions delegated to the county board of education in chapters 273 and 275 of the Code. Appellees contend, to the extent permitted, county boards of education do possess the type of legislative power which compels their consideration as a unit of government which must be equally representative of the people of the county. Legislative functions, legislative in the classical sense, cannot be delegated in Iowa. Wall v. County Board of Education, 249 Iowa 209, 228, 86 N.W.2d 231, 242. In other words, such legislative functions as may be performed by it must be exercised within well-announced guidelines. State v. Rivera, 260 Iowa 320, 149 N.W.2d 127, and citations. Chapter 273 sets out the powers and duties of the board in general and outlines certain specific duties primarily administrative. Chapter 275 sets out functions to be performed by the board pertaining to reorganization of school districts and gives the board power to approve or disapprove certain proposed boundary changes and mergers and attach certain areas to existing districts.

Paragraph 4 of section 275.12 provides: "The county board or boards of education, in reviewing such petition as provided in sections 275.15 and 275.16 [proposing reorganizations] shall review the proposed method of election of school directors and shall have the duty and authority to change or amend such plan in any manner, including the changing of boundaries of director districts if proposed, or to specify a different method of electing school directors on the basis of area, school population, or assessed valuation as may be required by law, justice, equity, and the interest of the people. In such action the county board or boards shall follow the same procedure as is required by sections 275.15 and 275.16 for other action on the petition by the county board or boards."

Although the board or boards do not initiate or finally approve these reorganizations, they do have considerable power to alter the proposition finally submitted to the people for

their approval or disapproval. In a sense these are legislative functions.

Section 275.1, as amended in 1965, requires the board to attach an elementary school district to an adjoining one with a high school if it fails to do so voluntarily by a specified date. Approval of the state board, however, is required. A similar provision provides, where an elementary district is so reduced that less than four sections remain, that the board annex this remnant to an adjoining high school district. Section 275.40(3) also grants the county board veto power over a proposed merger between adjacent elementary and high school districts.

Appellees assert that we ourselves have classified the functions of the county board as legislative, citing Allely v. Board of Education, 252 Iowa 1142, 110 N.W.2d 410; Green v. Webster County Board of Education, 253 Iowa 1198, 115 N.W.2d 856; and many others. However, a close examination of these decisions will disclose no judicial conclusion as to the "niche" the county board of education occupies in the "legislative process" of reorganization. Neither then nor now is such a determination necessary or vital. Our former holdings uniformly were that *legislative functions,* such as fixing boundaries of school districts, may not be de'egated to the courts under Article III, section 1, of the Iowa Constitution. See In re Community School District of Malvern, 250 Iowa 1240, 98 N.W.2d 737; Monroe Com. Sch. Dist. v. Marion County Board, 251 Iowa 992, 103 N.W.2d 746; In re Durant Community School Dist., 252 Iowa 237, 106 N.W.2d 670; Board of Education (Essex) v. Board of Education, 255 Iowa 537, 122 N.W.2d 849.

However, we are inclined to believe that the elements of decision permitted the county boards in these chapters give them legislative functions. Perhaps its greatly restricted functions, standing alone, would not justify a legislative classification rather than an administrative classification, but we think they are sufficiently broad to sustain the trial court's decision that they do legislate. It is our conclusion that, although the primary functions of these boards were administrative, in the recent legislative efforts to accomplish prompt school reorganization, substantial legislative functions were delegated to these

county boards, and that those are sufficient to require member selection under the one man-one vote principle announced in Reynolds v. Sims, supra, when the legislature also provided that the member be chosen by election. State v. Sylvester, supra.

■ ■ IV. The "equal protection" clauses of the Federal and State Constitutions prohibit invidious discrimination, but, of course, do not invalidate a state statute based upon reasonable classification which operates alike on all persons similarly circumstanced. Boineau v. Thornton, 235 F. Supp. 175 (1964), affirmed in 379 U. S. 15 and 917, 13 L. Ed.2d 84 and 189. This clause, as our history bears out, is not simply limited to the fundamental constitutional protections afforded us under the Federal Constitution, but rather extends its veil of protection to all forms of state and federal action. Ex Parte Virginia (1879), 100 U. S. 339, 25 L. Ed. 676; Brown v. Board of Education of Topeka (1954), 347 U. S. 483, 74 S. Ct. 686, 98 L. Ed. 873, 38 A. L. R.2d 1180. This veil of protection has been extended to all the various functions and powers of a state that will affect the individual citizen or his property. Gray v. Sanders, supra; Delozier v. Tyrone Area School Board, 247 F. Supp. 30 (1965), and citations; Cooper v. Aaron, 358 U. S. 1, at page 17 (1958), (school board).

It is stated in State v. Sylvester, supra, 26 Wis.2d 43, at 56, 132 N.W.2d 249, at 256: "Although the legislative power of a county may in fact be limited by the statutes, nevertheless the constitution * * * empowers the legislature to confer on the board * * * such powers of a local, legislative and administrative character as it shall from time to time prescribe. Under this authorization the legislature in chapter 59 has granted a substantial bundle of legislative powers to county boards and may grant additional substantial powers. Such powers are not to be confused with the powers of administrative boards and commissions to enact rules and regulations even though the latter have the effect of law. Since the composition of the legislature must conform to the principle of equal representation, it is logical that the arm or political subdivision of such legislature enacting legislation should be governed by the same principle of equal representation."

Although the court in Sailors v. Board of Education, supra, held, "At least as respects nonlegislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems * * *", it posed the question of whether, when a State provides for an election of a local official or agency, administrative, legislative or judicial, the requirements of Gray v. Sanders and Reynolds v. Sims must be met.

From this observation it is reasonable to believe that where the legislature chooses to submit the selection of an official or board to the electorate, it is of no consequence whether its functions affecting the personal and property rights of the people are administrative or legislative. In either case, those affected should be and are entitled to equal protection of the law. In such cases it seems the "well developed and familiar" (Baker v. Carr, supra, 369 U. S. 186, 226, 82 S. Ct. 691, 7 L. Ed.2d 663) judicial standards of the equality clause are applicable to determine whether a State has discriminatorily denied or diluted a citizen's right to exercise the elective franchise. Thus, whether judicial relief may be granted on the basis of the equality clause depends upon assertion and proof of invidious discrimination. If the clause is applicable here, the record clearly discloses a dilution of the citizen's voting power is permitted by the legislature in Quadrant II in Carroll County.

V. When the Fifty-second General Assembly provided for the election of members of the county board of education on an area basis, no thought was given to the one man-one vote principle later announced by the United States Supreme Court, and until recently the question as to whether the rule announced in Gray and in Reynolds applied to subordinate governmental instrumentalities had not been seriously considered. It now seems clear to us the principles which gave rise to those decisions must be applied to our present method of selection of members of the county board of education. Where the election of those members is required, and where as here the legislature provides for the election of these representatives of the people whether their function be considered legislative, quasi-legislative, or primarily administrative, their election must be made on a population basis, not upon area. Since this was

not done, we must agree with the trial court that the prescribed method of selection of the members of the defendant board of education is unconstitutional and violative of the equal protection clauses of the State and Federal Constitutions, that the court lacks the power to require the defendant board to redistrict itself, and that the court should not at this time require all board members to be elected at large. We do not agree with the trial court that an injunction should be granted restraining this board from performing its functions, legislative or administrative, at this time. On the other hand, we feel this court should retain jurisdiction to entertain further applications for relief pending consideration of this matter by the 1969 legislature.

VI. It is adjudged and declared that the portion of chapter 273 of the Iowa Code 1966 pertaining to and providing for the present apportionment of the county boards is unconstitutional under Amendment 14 to the United States Constitution and Article I, section 6, of the Iowa Constitution. This declaration shall be prospective in effect and its effective date shall be fixed by this court.

We agree with appellants' contention that the legislature should be given an opportunity to provide for a valid selection of the board before the court enjoins any action on its part. Bailey v. Jones, 81 S. D. 617, 139 N.W.2d 385. In Bailey, the South Dakota Supreme Court thought that an opportunity should be given to the legislature to enact a constitutionally-valid apportionment or districting plan for election of county commissioners and to provide for an orderly transition of governmental powers to such commissioners. In State v. Sylvester, supra, 26 Wis.2d 43, 61, 132 N.W.2d 249, 258, the court said: "Orderly operation of government requires that the county boards heretofore elected under [the invalid Code sections], and to be elected thereunder, * * * be permitted to function for a reasonable period sufficient for the enactment of new legislation * * *, and that the validity of acts of boards so elected should not be challenged upon the basis of this decision." Also see Mauk v. Hoffman, 87 N. J. Super. 276, 209 A.2d 150 (1965). In Kruidenier v. McCulloch, supra, we ourselves

extended time for legislative reconsideration of apportionment, without invalidating its acts or restricting its functions.

It is our decision here that the injunction issued by the trial court be dissolved. Efficient and orderly operation of government demands that the county boards heretofore elected under chapter 273 of the Iowa Code 1966, and to be elected thereunder in 1968, be permitted to function unimpaired for a period of time sufficiently reasonable to permit the enactment of new legislation to replace the unconstitutional portions of chapter 273, particularly in sections 273.3 and 273.4 of the 1966 Code.

This court retains jurisdiction and, if for any reason new legislation does not correct the evil present in the current county board system by the end of the Sixty-third General Assembly, appellees' application for an order requiring future elections of members to be at large, or an additional application for other relief, will receive further consideration by this court.— Affirmed in part, reversed in part and jurisdiction retained pending action by the Sixty-third General Assembly.

All JUSTICES concur except LeGRAND, J., who takes no part.