Byron B. STANLEY and C. H. Mannasmith, for Themselves and All Others Similarly Situated, Who May Come, and Join in a Class Action, Appellants,

v.

SOUTHWESTERN COMMUNITY COLLEGE MERGED AREA (MERGED AREA XIV), IN the COUNTIES OF ADAIR, ET AL., State of Iowa, and Robert J. Beecher, A. Jay Gantz, Harold Condit, Austin Turner, R. D. Brown, D. E. Mitchell, W. J. Kopp and John Kolterman, Members of the Board of Directors of said Merged Area, Appellees.

No. 54181.

Supreme Court of Iowa.

Feb. 9, 1971.

**32**

G. F. Hoffman, of Hoffman, Hoffman & Stewart, Leon, for appellants.

Arnold O. Kenyon, Kenyon & Platt, Creston, for appellees.

STUART, Justice.

Plaintiffs, residents, voters and taxpayers of Southwestern Community College Merged Area, hereinafter referred to as Merged Area XIV, brought this class action in equity, including a prayer for injunctive relief, challenging the validity of an election for the issuance of bonds to construct and equip buildings for such community college. The trial court held all proceedings legal and valid and denied plaintiffs relief. Plaintiffs appeal, assigning 42 errors. We affirm. We will refer to the errors as assigned by plaintiff for clarity and consistency, although they will not necessarily be considered in the order presented on appeal. We have in some instances "borrowed" from the trial court's opinion without acknowledging this by quotation marks.

Many of the asserted errors challenge the constitutionality of certain statutes. Others claim statutory requirements were not met. Therefore, we shall, at the outset, state the general rules which will guide our consideration.

■ "Regularly-enacted statutes are presumed to be constitutional, and courts exercise the power to declare such legislation unconstitutional with great caution. It is only when such conclusion is unavoidable that we do so." Goreham v. Des Moines Met. Area Solid Waste Agency (Iowa, 1970), 179 N.W.2d 449, 455, and citations.

■ The result of a school election is presumptively valid. Mere irregularities in the conduct of an election do not affect the result, but substantial material defects are fatal. It is the duty of the court to sustain an election if it has been so conducted as to give a free and fair expression

of the popular will. Widmer et al. v. Reitzler et al., 182 N.W.2d 177, Iowa, filed December 15, 1970; Harney v. Clear Creek Community School District (1967), 261 Iowa 315, 318–319, 154 N.W.2d 88, 90; Headington v. North Winneshiek Community School District (1962), 254 Iowa 430, 438, 117 N.W.2d 831, 836.

■ "An election which has resulted in a fair and free expression of the will of the legal voters upon the merits will not be invalidated because of a departure from the statutory regulations governing the conduct of the election, except in those cases where the legislature has clearly and unequivocally expressed an intent that a specific statutory provision is an essential jurisdictional prerequisite and that a departure therefrom shall have the drastic consequences of invalidity." Turnis v. Board of Education in and for Jones County (1961), 252 Iowa 922, 927, 109 N.W.2d 198, 201.

■ I. Appellants contend that Chapter 280A of the Code of Iowa is unconstitutional under Art. XI, section 3 of the State Constitution in that, (Error 1), it is an attempt to evade the debt limitation provisions by superimposing an artificial entity over traditional municipal corporations; (Error 2) it authorizes the issuance of bonds without providing that a proportionate share of such bonded indebtedness must be attributed to the underlying municipalities; and (Error 3) it does not provide for the creation of a corporate entity capable of issuing bonds and levying taxes.

The short answer to these contentions is found in the clear and unambiguous language of section 280A.16:

"A merged area formed under the provisions of this chapter shall be a body politic as a school corporation for the purpose of exercising powers granted under this chapter, and as such may sue and be sued, hold property, and exercise all the powers granted by law and such other powers as are incident to public corporations of

like character and are not inconsistent with the laws of the state."

The applicable principles of law in support of our determination that these allegations are without merit are stated in McQuillin, Municipal Corporations, section 41.13:

"Unless the contrary is expressed, a constitutional limitation concerning corporate indebtedness usually applies to each municipal corporation separately, and where one corporation embraces in part the same territory as another or others, each may contract corporate indebtedness up to the constitutional limit without reference to any other corporation embraced wholly or in part within its area. This rule applies where a board of education is a distinct corporation from the municipality, and is also true concerning an independent school district wholly or partially in the municipal area."

Goreham v. Des Moines Met. Area Solid Waste Agency, supra, 179 N.W.2d 449, 455, also involved an overlaying type of municipal corporation. Although no specific findings were made on the issue presented here, our discussion of related issues and the acceptance of the "new body corporate and politic" gave tacit approval to such corporation.

■ II. Appellants allege that since the merged area is under the direct regulation and control of the state, acting through the State Board of Public Instruction, it is a mere agency of the state and for the merged area to incur indebtedness and pledge the credit of the State of Iowa is contrary to sections 1, 2 and 5 of Art. VII of the State's Constitution. (Errors 4 and 5)

Again we refer to the language of section 280A.16 to show that the legislature intended to create and did create a separate and independent public corporation. "A merged area formed under the provisions of this chapter shall be a body politic as a school corporation for the purpose of exercising powers granted under this chapter,

* * *." There is no indication in Chapter 280A that the legislature intended to create a "mere agency" of the state.

The fallacy in appellants' state agency argument can best be recognized by the fact that the state exercises similar control over the traditional municipalities such as cities, towns, and ordinary school districts. This control has never been challenged as making these bodies "mere agencies" incapable of incurring indebtedness. Accordingly, we decline to apply this theory to Merged Area XIV.

III. Section 280A.17, as amended, provides: "It is the policy of this state that the property tax for the *operation* of area schools shall not in any event exceed three-fourths mill, and that the present and future costs of such operation in excess of the funds raised by such three-fourths mill levy shall be the responsibility of the state and shall not be paid from property tax * *." (Emphasis supplied)

■ Appellants contend the three-quarter mill limit prescribed by section 280A.17 is intended to include debt service in the cost of operation and that expenditures in excess of the amount so raised would be a state responsibility and thus create a state debt, contrary to Art. VII, sections 2 and 5 of the Iowa Constitution. It would also constitute a lending of the state's credit, contrary to Art. VII, section 1. Appellants further claim the tax levy to pay off the merged area XIV bonds will exceed the three-quarter mill limitation of section 280A.17 and this levy together with the levy for operation will exceed this limitation. (Errors 6, 7, 8, 9 and 10)

Did the legislature mean for debt service to be considered as part of the cost of "operation"? We cannot say that it would never be reasonable to suppose that debt service was included within the meaning of this term. However, "Where a statute is fairly subject to differing constructions, one of which will render it constitutional, the other unconstitutional or of doubtful constitutionality, that construction by which

it may be upheld will be adopted." State ex rel. Fulton v. Scheetz (Iowa, 1969), 166 N.W.2d 874, 877, and citations. We conclude the legislature did not intend for debt service expense to be considered as a part of the cost of operation. This conclusion is buttressed by other provisions of Chapter 280A. The authority to acquire sites and erect and equip buildings, to issue and pay off bonds, and to levy a tax to pay these bonds is found in sections 280A.19 through .21. These sections contain no reference to section 280A.17. Failure of the legislature to include a limitation either by reference to section 280A.17 or directly in these sections indicates no limitation was intended.

■ IV. Appellants challenge the constitutionality of Chapter 280A of the Code and Chapter 247 of the laws of the 61st General Assembly, alleging they embrace more than one subject. They also challenge sections .19 and .20 of Chapter 280A and Chapter 244 of the laws of the 62nd General Assembly, alleging that they embrace matters not expressed in the title. (Errors 11, 12, 13 and 14)

Art. III, section 29 of the Iowa Constitution provides, "Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title."

All that is necessary to satisfy the one subject requirement is that "the act should embrace some one general subject, and by that it is meant, merely, that all matters treated therein should fall under some one general idea and be so connected with or related to each other, either logically or in popular understanding, as to be part of or germane to one general subject". Long v. Board of Supervisors (1966), 258 Iowa 1278, 1283, 142 N.W.2d 378, 381. A review of the challenged sections convinces us that they clearly dealt with "one general subject".

■ The more serious challenge is based on the fact that the title here did not

specifically refer to the authority granted the board to issue bonds and raise taxes.

The general rules to be applied when such an issue is raised are these:

"It is held this constitutional provision should be liberally construed so as to embrace all matters reasonably connected with the title and which are not incongruous thereto or have no connection or relation therewith. It was designed to prevent surprise in legislation, by having matter of one nature embraced in a bill whose title expressed another. However, the title need not be an index or epitome of the act or its details. The subject of the bill need not be specifically and exactly expressed in the title. It is sufficient if all the provisions relate to the one subject indicated in the title * * *." State v. Talerico (1940), 227 Iowa 1315, 1322, 290 N.W. 660, 663; Lee Enterprises, Inc. v. Iowa State Tax Com'n. (Iowa, 1968), 162 N.W.2d 730, 737. We believe that under these general rules, the title here was sufficient.

In Fevold v. Board of Supervisors (1926), 202 Iowa 1019, 1034, 210 N.W. 139, 145, it was explicitly recognized that there are instances when it is so obvious that taxes will have to be raised that no one can fairly say they were "surprised" by the failure of the title to specifically refer to the provision authorizing taxation. This is true of the instant case. The title to the act commences: "An act to provide for the establishment and operation of area vocational schools and area community colleges * * *." It is reasonable to assume that expense would be necessary to accomplish this purpose of the act and accordingly that it would be necessary to issue bonds and raise taxes to support the educational activities the act contemplates.

Appellants cite only Chicago, R. I. & P. R. Co. v. Streepy (1929), 207 Iowa 851, 224 N.W. 41, to sustain their position. The title of the act under scrutiny in Streepy simply gave notice of the creation of the office of state budget director and of provisions for a state and local budget, for the examination of public accounts and for review of public contracts and bonds. Thus it was this court's view that no one reading the title should have been expected to realize that a provision was included in the act which created a new "emergency fund" and power in local municipalities to levy a tax for such fund.

The Streepy opinion suggests its own inapplicability to the case at bar. It distinguishes the Fevold case saying: "It was not reasonable or necessary to secure the object indicated in the title to the present act that a new fund should be created, or that power should be conferred upon a municipality to levy a tax to create such fund. More than this, the title to the act [Bovine Tuberculosis Act] in the Fevold case would put one upon inquiry, not only as to the method and means of eradication, but [as to the fact] that expense would be necessary to accomplish the purpose of the act, and that a fund would be needed therefor." 207 Iowa at 857, 224 N.W. at 43–44.

We therefore conclude it was not necessary for the title to specifically include the power to tax, incur indebtedness and issue bonds in this instance.

■ V. Appellants argue Chapter 280A violates Art. III, section 1, of the Iowa Constitution in that it delegates broad and undefined legislative and judicial powers without providing sufficient standards. (Error 15) We cannot agree. It has long been recognized that:

"No government, embodying the principles of the separation of power, could function if the legislature were prohibited from conferring power or authority of any character upon executive or administrative officials. The cases demonstrate that no such arbitrary prohibition is intended. In determining whether a statute authorizing the adoption of rules and regulations involved an unconstitutional delegation of legislative power, the issue is not whether any such authority has been delegated, but rather is as to the nature of the authority involved.

"If it is 'strictly and exclusively legislative' in character, it cannot be delegated. If it is not of that restricted character, it may be." State v. Van Trump (1937), 224 Iowa 504, 507, 275 N.W. 569, 571.

When as in the instant case the legislature declares a "general rule" and prescribes the circumstances under which it shall apply, it may properly delegate the authority to others "to fill up the details" as this is not a delegation of its "strictly and exclusively legislative" power. For "[W]hen the legislature lays down an intelligible and complete declaration of policy which is definite in describing the subject to which it relates or to the field wherein it shall apply, and the character of regulation which is intended to be imposed, it is proper to leave to a nonlegislative body the manner in which that general policy shall apply to varying situations." State v. Van Trump, supra, 224 Iowa at 508, 275 N.W. at 571. See Wall v. County Board of Education (1957), 249 Iowa 209, 228, 86 N.W.2d 231, 242.

The power here is delegated to a local governing body. There is an important "distinction between statutes which give a state administrative agency the power to legislate on matters to be applied statewide and those which give a local governing body power to legislate on matters of local application". Koelling v. Board of Trustees of Mary Frances Skiff Memorial Hospital (1966), 259 Iowa 1185, 1190–1191, 146 N.W.2d 284, 287–288. There we cited with approval the following rule from 16 Am. Jur.2d, Constitutional Law, § 250, pp. 500–501: "It is a well settled rule, supported with practical unanimity by the authorities, that the general doctrine prohibiting the delegation of legislative authority has no application to the vesting in political subdivisions of powers to govern matters which are local in scope. For a great variety of purposes and governmental functions the legislature may delegate a part of its power over local subjects to municipal corporations, * * *."

Adequate guidelines were provided by the legislature.

■ VI. Appellants argue the failure to provide for the filing of or hearing on objections on the formation of the merged area in Chapter 280A has deprived them of their property without due process of law, and that therefore this chapter is in violation of Art. I, section 9, of the Iowa Constitution and of the 14th Amendment to the Constitution of the United States. (Errors 20, 21, 22 and 23) They further allege that it is void as against "public policy". (Error 34)

Creation of a school district is a legislative function. Allely v. Board of Education (1961), 252 Iowa 1142, 1146, 110 N.W.2d 410, 413. Absent a statutory or constitutional requirement, no hearing is necessary. Zwingle Independent School District v. State Board (Iowa, 1968), 160 N.W.2d 299, 302; Board of Education of Green Mountain Independent School District v. Iowa State Board of Public Instruction (1968), 261 Iowa 1203, 1211–1212, 157 N.W.2d 919, 924.

There is no constitutional requirement for a hearing under the facts of this case.

"It is too clear for argument that the right of a taxpayer to participate in the proceedings with relation to the levy of the tax on his property is only as fixed by statute. He has no such constitutional right." Grout v. Illingworth (1906) 131 Iowa 281, 284, 108 N.W. 528, 529.

It is not our duty to pass upon the wisdom of such legislation. The legislature chose not to include a hearing requirement as they were constitutionally free to do. We cannot say that such legislation is against any definable "public policy".

■ VII. Appellants argue that the trial court erred in failing to hold the formation of Merged Area XIV defective under Chapter 280A, Code of 1966, as amended, because of various alleged devia-

tions from the procedure prescribed in that chapter for organizing a merged area. (Errors 24, 25, 26, 27, 28, 29, 30 and 31)

They allege that the plan submitted to the State Board did not contain a description of the geographic limits of the proposed merged area as required by section 280A.5; it did not contain assurances that adequate and qualified personnel would be provided to carry on the proposed curriculum and any necessary related services as required by section 280A.5(11); and it did not include specific information regarding arrangements agreed upon for compensating the Creston Community School District which operated an existing junior college in the proposed Merged Area XIV as required by section 280A.5(14).

They assert that the State Board did not carry out its duty to examine the plan and evaluate it in relation to all vocational schools, community colleges, and junior colleges existing, proposed or needed throughout the state as required by section 280A.7, and the State Board exceeded its authority conferred by section 280A.7 because it did not approve or disapprove the plan or return the plan to the planning board for modification and resubmission as required by that section.

It is further alleged that the notice of intent to form Merged Area XIV published pursuant to the requirements of section 280A.10 states that the approval of the State Board was given on January 17, 1966, whereas this approval was actually given on January 3, 1966, and that this notice states that Merged Area XIV was established for the purpose of operating an area vocational school whereas the State Board had designated it as an area community college.

Appellants also point to the fact that the County Boards in five of the counties forming the merged area took action to accept the plan as required by section 280A.10(2) prior to the publication of notice to form the proposed merged area under the provisions of section 280A.10(1).

The claimed organizational defects are merely technical irregularities. As the legislature has acted to cure any past errors or omissions in the formation of Merged Area XIV, it is not necessary for us to consider what effect, if any, these alleged irregularities in the formation of the merged area might have had had not the legislature acted.

Senate File 573, Acts of the 63rd General Assembly, reads in part as follows:

"Section 1. All proceedings taken prior to January 1, 1969, purporting to provide for the establishment, organization, formation, and changes in the boundaries of merged areas under the provisions of chapter two hundred eighty A (280A), Code 1966, and not heretofore declared invalid by any court, are hereby legalized, validated, and confirmed."

The "general rule" is "that a curative act may be passed whenever the irregularity to be healed consists in the doing of some act, or the doing of it in such a manner as the Legislature might have made immaterial or have authorized by a prior law." McSurely v. McGrew (1908), 140 Iowa 163, 172, 118 N.W. 415, 419. This is all that the legislature has done here.

In State v. Squires (1868), 26 Iowa 340, this court upheld an act passed to cure irregularities in the formation of a school district which came under a similar attack. When the district was organized it had not contained the necessary three hundred inhabitants, nor had the required ten days notice of its organization been given, but it was held that since it was a matter of discretion with the legislature to require the performance of these condition precedents, it could waive a failure to perform them. There is no reason the legislature could not similarly waive the requirements that appellants claim were not met in the instant case.

As appellants point out, if the defects are "jurisdictional" or violative of "substantive" or "vested" rights they cannot ordi-

narily be cured by a healing act. The alleged defects here can not be so characterized. We conclude this aspect of the appeal is without merit.

■■■■ VIII. Appellants argue the trial court erred in not holding Merged Area XIV void as to its formation and operation after finding as a matter of fact and law that the director districts are not of "approximately equal population" as required by section 280A.5(13), Code of 1966, and that they are in violation of the "one man-one vote" principle guaranteed by Art. I of the Iowa Constitution and by the 14th Amendment of the Constitution of the United States. (Errors 17, 18 and 19)

Failure to comply with the statutory provision was cured by Senate File 573, Acts of the 63rd General Assembly. Cases cited thereunder are applicable here. There was no error in allowing a "reasonable time" to achieve constitutional mandate. Under our previous decisions and those of the federal courts the constitutional requirement of one man-one vote is applicable. Meyer v. Campbell (1967), 260 Iowa 1346, 152 N.W.2d 617, in which we applied this principle to the selection of school board members is controlling here.

However, our position in the past with respect to the status of officials whose election violated these principles has always been that stated in Mandicino v. Kelly (Iowa, 1968), 158 N.W.2d 754, 766:

"Orderly operation of government requires that the county boards heretofore elected under section 39.19 and to be elected thereunder in 1968 be permitted to function for a reasonable period sufficient for the enactment of new legislation and that the validity of the acts of the board so elected should not be challenged upon the basis of this decision."

Appellants point to the fact that in this case section 280A.5(13) is¹ clearly constitutional and therefore there is no reason to allow a period of time for the malapportioned board to continue to operate since there is no need for new legislation. The issue ultimately confronting us then is whether the fact that the malapportionment complained of was a result of administrative determination rather than obedience to a seemingly valid statute later held unconstitutional should make any difference in our basic approach. Under the facts in this case, at least, it does not.

The demand for the "orderly operation of government" is no less here than in any of our previous cases. The planning and approval of Merged Area XIV antedated our decision in Meyer v. Campbell, supra. This was an area where there was considerable confusion and given the fact that few guidelines existed to aid those planning this district, we will not say that the action of its directors should be declared void.

■■■■ IX. Appellants allege that the issuance of the bonds would be illegal and invalid because the State Department of Public Instruction has not approved the buildings to be erected as required by section 280A.25(6). (Errors 32 and 33)

This challenge is premature. The approval of the State Department of Public Instruction is necessary before any construction can be begun, but it is not necessary to secure its approval until that time. As the trial court stated, "It might well be a great waste of time and money for the State department to approve buildings to be built before the bonds are voted and sold, if the bond issue should fail or should the bonds prove to be unsalable, the time and money incident to the preparation and examination of detailed plans would have been for naught."

■■■■ Appellants also point out that the State Advisory Committee has not advised the State Board as to these buildings. We are in agreement with the trial court's finding "that the advice contemplated in section 280A.32 is general advice and of an overall planning nature and that specific advice as to buildings to be erected and equipped is not contemplated".

X. Section 280A.21 provides: "No indebtedness shall be incurred under section 280A.19 until ˌauthorized by an election. A proposition ˈto incur indebtedness and issue bonds for area vocational school or area community college purposes shall be deemed carried in a merged area if approved by a sixty percent majority of all voters voting on the proposition in the area."

 Plaintiffs claim this section is unconstitutional and void for indefiniteness and vagueness "because it does not provide for notice of bond election, does not specify the number of publications of such notice, does not specify the newspapers in which such notice shall be published, does not specify the period of time, which must elapse between publication of such notice and the date of the election, does not prescribe the contents of such notice and does not prescribe the manner of determining the precincts and polling places for the bond election." (Error 16)

Certainly section 280A.21 has all the deficiencies claimed. However, we are not restricted to this section alone but can and should consider all statutes in pari materia. Northwestern Bell Telephone Co. v. Hawkeye State Telephone Co. (Iowa, 1969), 165 N.W.2d 771, 774; Boomhower v. Cerro Gordo County Board of Adjustment (Iowa, 1968), 163 N.W.2d 75, 76; Powers v. McCullough (1966), 258 Iowa 738, 746, 140 N.W.2d 378, 384.

By statute a merged area is "a body politic as a school corporation" section 280A.16. Chapter 277, Code 1966 contains the election laws for "school corporations". The election was conducted in accordance with the provisions of this chapter. We believe the board of the merged area acted properly in doing so.

We would, of course, not had the problem before us if the section had contained a reference to Chapter 277, but the lack of a specific reference is not fatal. "A law should not be held invalid as unworkable because of uncertainty of meaning, unless there is no other reasonable alternative." Tolerton and Warfield Co. v. Iowa State Board (1936), 222 Iowa 908, 916, 270 N.W. 427, 432.

We believe the legislature by specifically designating a merged area as a "school corporation" intended to have elections under the provisions of 280A conducted in the manner set out in Chapter 277 for elections in school corporations. Our conclusion finds support in later action of the legislature in changing the wording of section 277.1 to specifically include merged areas. Section 27, Chapter 1025, Laws of the Sixty-third General Assembly, Second Session; section 277.1, Code 1971.

"A subsequent amendment to a statute before us for interpretation does not constitute a construction which is binding on us, but should be considered and, depending upon the circumstances, may indicate either an intent to change the existing law or an intent to clarify a doubtful statute." Dye v. Markey (1966), 259 Iowa 1045, 1047, 147 N.W.2d 42, 43, and citations; Des Moines Independent Community School District v. Armstrong (1959), 250 Iowa 634, 645, 95 N.W.2d 515, 521; Hansen v. Kuhn (1939), 226 Iowa 794, 804, 285 N.W. 249, 255. The question here was not the meaning of the section but whether another chapter was to be applied in determining election procedure. The change in Chapter 277 makes it clear the legislature originally intended it apply to Chapter 280A, even though there was no change in 280A.21.

XI. In the resolution authorizing the election and in the notice of the election each community school district in the merged area was designated a separate precinct and the high school in each such district was designated as the polling place.

Appellants argue the election on July 1, 1968 was invalid and ineffective because: (A) the notice of the election (1) failed to describe the precinct boundaries by legal description, and (2) failed to give the street addresses for the high school in each district, section 277.3; (B) improper precincts

and polling places were used, sections 277.5 and 277.7; and (C) polling places were not open for a sufficient period of time, section 277.9. (Errors 37, 38, 39 and 40)

◼ A. When an action is brought after the election has been held only substantial, rather than strict, compliance is all that is required of the notice. "The reason being that after the election has been held and the will of the voters has been fairly expressed the courts will seek to sustain it by a liberal construction of the applicable statutes and treat them as directory." Knorr v. Beardsley (1949), 240 Iowa 828, 853, 38 N.W.2d 236, 250; Widmer et al. v. Reitzler et al., 182 N.W.2d 177, 179, filed December 15, 1970; Neal v. Board of Supervisors of Clarke County (1952), 243 Iowa 723, 729, 53 N.W.2d 147, 150.

"It has also long been held, the purpose of giving notice is to inform voters of an impending special election and the proposition to be submitted in sufficient time that they may be able to decide upon their vote." Widmer et al. v. Reitzler et al., supra.

◼ As a practical matter, the designation of precincts by school district was more meaningful to the voter than a legal description of the boundaries and more likely to truly inform him of the precinct boundaries. The statute does not require a legal description and we have not been referred to any cases so holding. There is only one high school in each community district. The notice gave the name of each city in which it is located. The largest precincts contained population of less than 15,000. Under these circumstances the failure to specify a street address was not fatal to the notice. The boundary description by school district and the designation of the town in which the high school is located adequately informed the voter of the place where he was to cast his ballot.

◼ B. Under section 277.5 the voting precincts shall be the same as the last general state election except that the board may combine two or more precincts into one.

As far as the record shows that is what the board did in this instance. Electors may protest such combination by petition. No such petition was presented here. There is no showing of a fatal non-compliance with this statute which, in any event, is directory only.

◼ Section 277.7 states in part: "In all school corporations the board shall determine a suitable polling place in each precinct, which polling place shall be, when practicable, the same place used by the last city or state election." The board exercises its discretion in determining when it is or is not practicable to use the same polling place. It did not abuse its authority in deciding to use the high schools as polling places.

◼ C. Section 277.9 provides polls in school corporations where registration of voters is not required shall be open from noon until 7:00 p. m. When a board has combined precincts it may order the polls to open at 7:00 a. m. It did not abuse its discretion in not ordering the polls to open at that time.

◼ XII. Appellants argue the election was invalid because the proposition was not instituted by a petition signed by a number of electors equal to 25% of those voting at the last school election as required by section 296.2, Code 1966 and because the published notice did not satisfy the requirements of section 296.4. (Errors 35 and 36) No attempt was made to comply with either section. The trial court held and appellees argue that the legislature did not intend to make Chapter 296 applicable to merged area bond proceedings.

At first instance, it appears inconsistent to hold Chapter 277 setting forth election procedures for school corporations is applicable and to hold Chapter 296 relating to indebtedness of school corporations is not applicable. However, it is a matter of legislative intent and we agree with the trial court that there was no intention to make Chapter 296 applicable to 280A.

The legislature did not amend Chapter 280A or Chapter 296 to clarify their intention in this regard as was done in Chapter 277. Chapter 280A refers only to an election and contains no provisions setting forth the procedure leaving a void unless Chapter 277 is applied. However 280A does cover matters contained in Chapter 296. This would not have been necessary if Chapter 296 were to be applied to Chapter 280A.

Section 296.1 contains a broad authorization to contract indebtedness to defray the cost of purchasing, building, furnishing, reconstructing, repairing, improving or remodeling many specified types of buildings as well as procuring sites.

Section 280A.19 "Boards of directors of merged areas may acquire sites and erect and equip buildings for use by area vocational schools or area community colleges and may contract indebtedness and issue bonds to raise funds for such purposes." The provision is much more restrictive.

Section 280A.20 contains the substance of the last sentence of section 296.1. The last sentence of section 280A.21 contains in substance the same matter as appears in section 296.6. If the legislature intended Chapter 296 to apply, it would not have repeated these provisions. We therefore conclude their intention was to set forth in Chapter 280A the matter contained in Chapter 296 that they wished to govern merged areas and that any matter not included was intended to have no application.

The petition required by 296.2 is an extra step in the proceedings which could very well be omitted if the legislature so desired.

As the authority granted the board of directors of merged areas was much more restrictive, and the geographical area so much larger, the legislature must have felt the petition requirement was unnecessary.

Sections 296.3, 296.4 and 296.5 are concerned with election procedures different from those contained in Chapter 277, which were complied with. We believe the legislature would have incorporated these provisions into Chapter 280A if they intended them to apply as they did the provisions mentioned above.

■ XIII. Appellants argue in the alternative that if Chapter 277 is applicable, the notice provisions of section 277.3 were not met. (Error 42)

Section 277.3 provides: "There shall be written notice of all regular or special elections, which notice shall be given not less than ten days next preceding the day of the election, except as otherwise provided in this section * * *.

" * * *

"In those corporations * * * in which more than one voting precinct has been established the secretary shall publish it once each week for two consecutive weeks preceding the election in some newspaper published in the county and of general circulation in the corporation."

We interpret these requirements together and hold that when two publications are required, the first publication must be not less than 10 days prior to the election and the second publication should appear one week later. It must be in the last week before the election, but need not precede the election by a full week.

We have been unable to find the dates of publication of notice in any of the printed matter. There is no claim there were not two publications prior to the election. Assuming this to be so, they were sufficient to constitute substantial compliance with section 277.3. In Widmer et al. v. Reitzler et al., 182 N.W.2d 177, 181, filed December 15, 1970, we said: "nothing definite appears of record which discloses a single voter who was prejudiced by lack of knowledge as to the election date. Neither is there any affirmative showing of fraud by anyone, or that the election would have actually resulted differently had five rather than two days elapsed between publication of the last notice and the election." This statement is applicable here. See also Neal v. Board of

Supervisors (1952), 243 Iowa 723, 729, 53 N.W.2d 147, 150.

■ XIV. In error 41, appellants claim the court erred in failing to hold the election invalid and ineffective because the notice of the sale of bonds was not published in each county containing any portion of the merged area. Appellant urges this is required by section 75.2.

First of all, it is difficult to perceive how a defect in a notice for the sale of bonds could affect the validity of an election pursuant to which they were advertised. This is not argued and in view of our holding we find it unnecessary to decide this issue.

The resolution authorizing the sale of the bonds and the advertising thereof provided for publication of notice "of such sale once each week for two consecutive weeks in a newspaper published and having a general circulation in Union County (the county in which the physical plant facilities of this Merged Area school corporation are located) and sold at public sale in the manner presented by Chapter 75 of the Code of Iowa, 1966".

Section 75.2 provides: "When public bonds are offered for sale, the official or officials in charge of such bond issue shall, by advertisement published for two or more successive weeks in at least one newspaper located in *the* county, give notice * * *." (Emphasis supplied)

The trial court held and appellees argue that Chapter 75 does not apply unless the board of directors wishes to apply it. Although there is support for the position that the legislature did not intend to have it apply as Chapter 76 was specifically mentioned without reference to Chapter 75, we cannot reach that conclusion if we follow the reasoning invoked in holding Chapter 277 applicable and Chapter 296 inapplicable. We hold Chapter 75 is applicable to the issuance, sale and advertising of bonds under Chapter 280A.

However, we do not believe section 75.2 requires notice of the sale of bonds to be published in each county in the merged area. The section does not seem to encompass a situation where a school district crosses county lines, a common situation now. We interpret this section to require the publication only in the county where the bonds are to be offered for sale. As a practical matter active bidders generally receive notice of a bond offering from sources other than the local publication and repeated publications would have little if any benefit.

We find no reversible error and therefore affirm the trial court.

Affirmed.

All Justices concur.