Kathleen A. GRAVES, Appellant,

v.

**IOWA LAKES COMMUNITY COL- LEGE, Linda Wiegman, Tom Herbst, and Dale Simon, Appellees.**

No. 99–0863.

Supreme Court of Iowa.

Jan. 24, 2002.

Victoria L. Herring, Des Moines, for appellant.

Stephen F. Avery of Cornwall, Avery, Bjornstad & Scott, Spencer, for appellee.

NEUMAN, J.

After an auspicious beginning, the employment relationship between a community college and a project coordinator soured and failed. This suit was brought to sort out the employee's claims that the college and its administrators were responsible and liable for her discharge. All parties have appealed but we think the trial court's rulings were correct and therefore affirm.

## I. Background Facts and Proceedings.

The suit was brought on a number of theories, though not all reached jury consideration, and only one resulted in a modest recovery. Important facts were hotly disputed but, in view of our holding, they will be recited and considered in accordance with the plaintiff's version. *Balmer v. Hawkeye Steel,* 604 N.W.2d 639, 640–41 (Iowa 2000).

Plaintiff Kathy Graves began working for defendant Iowa Lakes Community College at its Estherville campus in September 1994 as coordinator for the Women

Work project. This new grant-funded project was designed to provide unemployed, low-income women with the personal and employment skills necessary to return to the work force. As the first coordinator, Graves was responsible for creating the program from scratch. She wrote curriculum, enlisted program presenters and recruited eligible participants. She originally worked part-time under the supervision of the project's director, defendant Linda Wiegman. Wiegman's direct supervisor was defendant Dale Simon, dean of the college's Estherville campus. Defendant Tom Herbst was the college's director of human resources.

The first eight-week program seems to have been a resounding success. Wiegman gave Graves a highly favorable evaluation and offered her a position for the 1995–96 fiscal year, elevating her compensation from an hourly wage to a contracted amount. The success of the initial program led to additional ones, carrying substantial grants over a two-year period.

The relationship between Graves and Wiegman, however, did not flourish. According to Graves' showing, Wiegman intruded into her personal affairs by "counseling" her how to "recover" from a recent divorce, urging her to focus exclusively on her work and to avoid starting a new relationship. Graves nevertheless believed her performance continued to be exemplary. Wiegman's subsequent unsatisfactory evaluations were not made known to her, either in writing or orally. Although the defendants offered sharply conflicting testimony, we assume these uncommunicated negative evaluations were calculated to make Graves a scapegoat when failures by other employees led to difficulty in complying with guidelines required for continued funding of the program. Throughout the winter and spring of 1996, Wiegman documented concerns about Graves and discussed these concerns with Simon. But Graves insists she was never told of any problems or complaints.

At a meeting on April 9th, Wiegman gave Graves a written copy of her recent highly negative evaluation, which ranked her performance as unsatisfactory in all areas. Simon gave Graves a memo informing her that her contract would not be renewed and that she was no longer employed after that date. The memo also directed her not to have any contact with "agencies, clients, and staff that have been involved in the [Women Work] program" for the remainder of the contract period.

Graves was shocked at this turn of events, claiming she had no idea there were problems with her performance. She believed that even if Wiegman no longer wanted her to work as the program coordinator there were other positions at Iowa Lakes for which she was qualified and should have been considered. She filed a grievance pursuant to Iowa Lakes' employee handbook. Herbst responded by letter, indicating Wiegman's decision not to renew her contract was justified. Herbst told Graves he had discussed his conclusion with the college president who agreed with his decision. The grievance decision process was over and Graves commenced this suit.

Graves sued the defendants for negligent supervision, defamation, tortious breach of contract, interference with prospective business advantage and breach of contract. A jury found Iowa Lakes liable for breach of contract, awarding Graves no actual damages but granting $1200 in nominal damages. The jury also awarded punitive damages against the individual defendants, but the district court vacated this award and, because of evident confusion over the instructions, ordered a new trial on damages for breach of contract. This

appeal by Graves and cross-appeal by the defendants followed.

## II. Issues on Appeal.

■ *A. Negligent supervision.* A count in negligent supervision against Herbst and Simon survived a pretrial motion but was dismissed at the close of evidence. In assigning dismissal of this claim as error, Graves relies on our holding in *Godar v. Edwards,* 588 N.W.2d 701, 709 (Iowa 1999) in which we recognized a cause of action for negligent hiring as well as for negligent supervision and retention. Our decision in *Godar* rested on Restatement (Second) of Agency section 213, which would permit a third party claim against an employer who breached a duty of reasonable care in the supervision and retention of an employee who posed a threat to the public. Graves would have us extend such an action beyond injuries inflicted on a third party, to also include those inflicted upon another employee.

There is some support for such an expansion, but it does not extend to cases such as this where there are no physical injuries. *Bruchas v. Preventive Care, Inc.,* 553 N.W.2d 440, 442 (Minn.Ct.App. 1996) (allowing recovery by fellow employee for negligent supervision but only for physical injuries); *see Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.,* 967 F.Supp. 1148, 1157 (D.Minn.1997) (no recovery for negligent supervision based solely on economic loss); *Sibley v. Kaiser Found. Health Plan,* 998 S.W.2d 399, 403–04 (Tex. Ct.App.1999) (recovery for negligent supervision extends only to physical injuries). Because Graves does not assert any physical injury it is unnecessary for us to decide whether a negligent supervision claim is available to a fellow employee. *Theisen v. Covenant Med. Ctr., Inc.,* 636 N.W.2d 74, 82–83 (Iowa 2001). Therefore, we affirm the dismissal of Graves' claim.

*B. Interference with prospective business relationships.* Graves' separate claim for tortious interference with a business relationship was dismissed on a pretrial motion. At the close of evidence she sought to have it reinstated and assigns error in the trial court's refusal to do so.

■ Graves' showing on this claim goes no further than a routine claim for breach of contract. Lacking is the essential element for this intentional tort: an improper purpose on defendants' part "to financially injure or destroy the plaintiff." *Fischer v. UNIPAC Serv. Corp.,* 519 N.W.2d 793, 800 (Iowa 1994). We think the dismissal was correct.

*C. Defamation.* Graves' defamation claim was rejected by the jury. She claims she was slandered by false comments Wiegman made to program participants and others in the community about her performance as program coordinator. One woman testified Wiegman told her Graves left Iowa Lakes because she no longer wanted to work at the college. Another participant stated Wiegman told her a state grant monitor reviewed the program files and, upon finding errors or incomplete reporting, demanded that Graves be terminated as program coordinator. There was no evidence that either of these statements was true.

■ In submitting the claim, the trial court adopted Iowa Civil Jury Instruction 2100.2, which, after listing the other requirements for recovery, requires a showing that the statements "injure the plaintiff in the maintenance of her occupation." Graves' challenge is to this jury instruction. She contends the word "injure" should have been changed to "affect," the word we used in *Lara v. Thomas,* 512 N.W.2d 777, 785 (Iowa 1994). In *Lara* this court defined statements which are slanderous per se as "attack[s] on the integrity

and moral character of a party," and "imputations *affecting* a person in his or her business, trade, [or] profession." *Lara*, 512 N.W.2d at 785 (emphasis added). Graves contends that but for the use of "injure" rather than "affect" in the jury instruction, the jury would have found Wiegman's statements slanderous per se.

▮▮▮ Our use of the word "affect" in *Lara* was not intended to allow recovery in a defamation action where there is no injury. Spoken words are actionable as slander because they injure a person's reputation and good name. *Id.* There must be some harm to a person's reputation. This requirement is suggested by the use of the word "injured" in uniform instruction 2100.2 and Restatement (Second) of Torts sections 570 and 573 (1977). Section 570(6) states spoken defamatory matter is actionable without any showing of special harm if it imputes to its victim "matter incompatible with his business, trade, profession, or office, as stated in section 573...." Restatement (Second) of Torts § 570(6), at 186. Slanderous statements affecting a business or occupation "ascribe[] to another conduct, characteristics or a condition that would *adversely* affect his fitness for the proper conduct of his lawful business...." *Id.* § 573, at 191 (emphasis added). Such concepts of harm to reputation are not conveyed by mere use of the word "affect."

The word "affect" in *Lara* should be understood to connote an injury by way of being adversely affected. The court committed no error by submitting the uniform instruction.

**D. *Appeal and cross-appeal on order for new trial on damages.*** The jury found for Graves on her breach of contract claim, but there was considerable confusion over the damage award. All parties and the trial court agree that, if an award can stand, there should be a new trial to fix the amount.

Preliminarily we must address Iowa Lakes' challenge to the court's subject matter jurisdiction. We will then discuss the college's substantive disagreements with Graves' breach of contract claim before turning to the court's rationale for granting a new trial on contract damages only.

*1. Jurisdiction.* Iowa Lakes contends in its cross-appeal that the district court lacked subject matter jurisdiction[1] because the college is a "state agency" for purposes of Iowa Code chapter 669 (State Tort Claims Act). Thus, the argument continues, the college cannot be sued because Graves failed to exhaust her administrative remedies before the state appeal board as required in Iowa Code section 669.5 (1999).

▮▮▮ Section 669.2(5) defines state agency and lists at least some of them, but does not include community colleges. We think the legislature's failure to include community colleges with the listed entities was deliberate. In *Stanley v. Southwestern Community College Merged Area*, 184 N.W.2d 29, 33–34 (Iowa 1971), we said that, for purposes of incurring indebtedness or pledging credit, community colleges are not agencies of the state. In *Graham v. Worthington*, 259 Iowa 845, 853, 146 N.W.2d 626, 633 (1966), we held school districts are not agencies of the state. We now hold that community colleges likewise do not qualify as state agencies.

1. Subject matter jurisdiction is a statutory requirement which cannot be waived by consent or estoppel. *State v. Mandicino*, 509 N.W.2d 481, 482 (Iowa 1993). Lack of subject matter jurisdiction may be asserted at any time during the proceedings. *Id.*

Iowa Code chapter 260C establishes community colleges in fifteen designated areas when "two or more school systems or parts of school systems merge resources to operate a community college...." Iowa Code § 260C.2(4). Iowa Lakes Community College is such a merged area, in northwest Iowa. Code section 260C.16 provides that community colleges "shall be a body politic as a school corporation for the purpose of exercising powers granted under the chapter, and as such may sue and be sued, hold property, and exercise all the powers granted by law...."

■ Because community colleges do not qualify as state agencies for purposes of Iowa Code section 669.5, Graves was not obliged to seek review before the state appeal board before bringing this suit.

*2. Breach of contract.* Iowa Lakes also claims there can be no recovery for breach, as a matter of law, because Graves' employment contract was for only one year and she was employed and compensated for that long. The contention fails because it stands only on defendants' view of the evidence. Although the college paid Graves her full salary for the year, it summarily discharged her three months before the contract was due to expire. Graves contended, and the jury found, that she was terminated without just cause. By way of actual damages, Graves tendered proof that her early discharge resulted in a loss of fringe benefits to which she would have otherwise been entitled as an employee. This claim included, among other things, use of the college racquetball courts, discount movie tickets and access to the computer lab.

The jury also found that Graves proved the Iowa Lakes Employee Handbook was part of her employment contract. Graves claimed that, contrary to the handbook, her employment was terminated without prior warning or an opportunity to meet the requirements deemed lacking by her supervisors. The record supports this claim. The district court did not instruct the jury to consider consequential damages, if any, arising from such breach, and Graves does not contend on appeal that it should have done so. In no event would damages for emotional or reputational harm be recoverable for breach of this kind of contract. *Bossuyt v. Osage Farmers Nat'l Bank,* 360 N.W.2d 769, 777 (Iowa 1985); *see generally* Dan B. Dobbs, *The Law of Remedies* § 12.5(1), at 107–08 (2d ed.1993). Graves' claim for alleged harm to her future economic prospects was tied to legal theories discussed elsewhere in this opinion which, as noted, were ultimately rejected by the court or jury.

We reject the defense contention that there can be no recovery of actual damages on retrial because of the jury finding there were no actual damages. This jury finding was reached after instructions the trial court later considered to have been flawed. We affirm the court's order for retrial because of the extremely wide discretion accorded trial courts in ruling favorably on motions for a new trial. *Cowan v. Flannery,* 461 N.W.2d 155, 157 (Iowa 1990).

The real question is whether Graves suffered actual or only nominal damages related to the breach, a matter to which we now turn.

*3. Damage verdicts.* The jury first returned verdicts on the breach of contract claim, awarding $500 in actual damages and $6300 for nominal damages. It awarded punitive damages in the amount of $1000 against Wiegman and $250 against Herbst. After the court told the jury it could not award both actual and nominal damages, the jury deliberated further and transferred the $500 actual damage award

to the nominal damage award, making it $6800. The court also rejected these amended verdicts, informing the jury that nominal damages were not to be awarded as compensation, only to declare legal rights. The jury once again retired and returned a third time, finally awarding no actual damages and $1200 in nominal damages. It also modified the punitive damage award, awarding $2500 against Wiegman, $1250 against Herbst, and $625 against Simon.

On post-trial motions, the district court ruled that liability on the breach of contract claim was clearly proven, but would not support an award for punitive damages, and vacated that award. Because it determined it had erred in its instructions, confusing the jury, the court ordered a new trial on compensatory and nominal damages. On appeal, both sides address nominal damages, but because a new trial was ordered on this issue, we need consider only Iowa Lakes' contention that Graves is not entitled to any nominal damages.

Nominal damages may be properly recoverable for breach of contract. *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.,* 510 N.W.2d 153, 156 (Iowa 1993); Restatement (Second) of Contracts § 346, at 110 (1981). The trial court was correct in observing that, although nominal does not mean small in this context, courts generally award a dollar or other small amount. Nominal damages have been described as "the smallest appreciable quantity," and only "a trivial or trifling sum." 22 Am.Jur.2d *Damages* § 11, at 40 (1996). On retrial the jury should be so instructed, and judgment should not be entered for nominal damages in excess of $1.

*E. Punitive damages.* Punitive damages for breach of contract are only upheld if the "breach (1) constitutes an intentional tort, and (2) is committed maliciously...." *Magnusson Agency v. Pub. Entity Nat'l Co.—Midwest,* 560 N.W.2d 20, 29 (Iowa 1997). Because the jury did not find any of the defendants committed an intentional tort, there was no basis for an award of any punitive damages. *Id.; Hockenberg,* 510 N.W.2d at 156. Dismissal of that claim is therefore affirmed.

### III. Disposition.

The judgment of the trial court is affirmed on both appeals, and the case is remanded for a new trial. Liability having been established on Graves' breach of contract claim, the only issue on retrial is defendants' liability for either actual or nominal damages, but not both.

**AFFIRMED AND REMANDED.**